rejected, and that relators' suit be dismissed at their cost.

O'NIELL, C. J., and ST. PAUL, J., concur in the decree.

=====

(106 So. 840)

No. 27640.

STATE v. FOBBS.

In re FOBBS.

(Jan. 4, 1926.)

*(Syllabus by Editorial Staff.)*

1. **Constitutional law ⬱45, 328—That amount involved is small will not preclude Supreme Court from hearing constitutional objections.**

In view of Const. 1921, art. 1, § 6, providing that courts shall be open for the administration of justice without denial or partiality, the Supreme Court will not refuse to hear relator's complaint that law exacting fee for registering licensed chauffeurs is unconstitutional, though the fee involved is small.

2. **Statutes ⬱64(10)—Contents of statute extraneous to main purpose may be expunged without declaring whole act unconstitutional.**

Provisions in statute not germane to its main purpose as expressed in title may be rejected, and do not require that whole act be declared unconstitutional as having more than one distinct and independent purpose.

3. **Statutes ⬱121(1)—Requirement for chauffeur's license held not germane to statute and invalid.**

Provisions of Act No. 120 of 1921 (Extra Sess.) §§ 25, 35, prohibiting driving of vehicles on highways without chauffeur's license, *held* invalid, under Const. 1921, art. 3, § 16, as not germane to main purpose of act as declared in title to carry into effect Const. 1921, art. 6, § 22, providing for general highway fund to be derived from designated sources.

4. **Statutes ⬱118(1)—Provision for punishment for infraction of act, main purpose of which is to provide revenue for highway fund, held invalid.**

Provisions of Act No. 120 of 1921 (Extra Sess.) for punishment and penalty for infraction of provisions of act, the main purpose of which is declared under Const. 1921, art. 3, § 16, to be the carrying into effect of Const. 1921, art. 6, § 22, providing that general highway fund be derived from certain sources, *held* not valid or applicable to violations of provisions invalid because not germane to main purpose of act.

Jim Fobbs was convicted of operating a motor vehicle without a chauffeur's license. On application for certiorari and prohibition to the Judge of the First District Court, Parish of Caddo. Writs perpetuated, and relator discharged.

Melvin F. Johnson, of Shreveport, for relator.

L. C. Blanchard, Dist. Atty., A. M. Pyburn, and B. B. Breazeale, Asst. Dist. Atty., all of Shreveport, for the State.

ST. PAUL, J. Relator was convicted before the lower court of operating a motor-driven vehicle on the public roads of Caddo parish without first having obtained a chauffeur's license, contrary to the provisions of Act 120 of 1921, p. 280 (sections 25 and 35).

Relator pleaded in the court below, and asks for relief here, on the ground that said act is unconstitutional, in this, that it embraces *two* distinct objects, contrary to the provisions of section 16 of article 3, page 8, of the Constitution of 1921, reading as follows:

"Section 16. Every law enacted by the Legislature shall embrace but one object, and shall have a title indicative of such object."

[1] The matter directly at issue is small, being only the right vel non of the highway commission to exact a small fee for registering licensed chauffeurs; but the *principle* involved reaches further, and we deem it our duty to listen to the plea of this "(swart) village Hampden that with dauntless breast" withstands the attempt to force upon him a tax which he thinks unwarranted by any *valid* law. Const. 1921, art. 1, § 6, p. 2.

## I.

The act thus attacked is entitled:

"AN ACT TO CARRY INTO EFFECT SEC-
TION 22 OF ARTICLE SIX OF THE
CONSTITUTION OF LOUISIANA FOR
THE YEAR 1921.

"(A) To impose an annual graded license tax
upon all motor and other vehicles using the
public highways of the state. Designating the
secretary of state to collect such license tax,
and defining his powers and duties in connec-
tion therewith and to authorize in certain cas-
es, the return of the whole or a part of the
license taxes to certain parishes. (B) To de-
fine, control and regulate motor and other ve-
hicles, their registration, use and operation,
which may be used on the public highways of
the state; (C) giving the Louisiana Highway
Commission full authority to make the neces-
sary rules governing and controlling the regis-
tration of chauffeurs and dealers, vesting the
said commission with power to provide or cause
to be provided proper safeguards on highways,
bridges and vehicles, and to make rules and reg-
ulations affording proper protection to life and
property; (D) providing punishment and pen-
alties for infraction of any section or sections
of this or any other act pertaining to highways
of the state."

The title of the act is given above exactly
as it is written, except that we have here put
the first paragraph of the title in capital let-
ters, and have divided the second paragraph
thereof into four clauses, designated by the
letters (A), (B), (C), and (D).

## II.

Section 22 of article 6 of the Constitution
of 1921 (page 34), above referred to, provides
that "the general highway fund" of the state
shall be derived from the following sources,
to wit: (1) An annual graded license tax to
be imposed (a) on all motor vehicles; and (b)
on all other vehicles using the public roads;
(2) on gasoline sold in the state; (3) on kero-
sene or other explosives used for the gener-
ation of motive power; and (4) any moneys
derived from any other source and *passed to
the general highway fund* by the Legislature
(meaning, of course, any moneys *appropriated*

by the Legislature for highway purposes out
of other funds belonging to the state).

Then, *also*, section 21 of article 6 (page 33)
aforesaid, provides that the "general highway
fund," created by section 22 aforesaid, shall
be expended in order to perfect a general
system of state highways, "and when said
system shall have been completed, the Legis-
lature shall provide an equitable reimburse-
ment out of the general highway fund to the
parishes for the moneys theretofore spent by
them on the state highway system."

It is manifest, however, that the Legisla-
ture of 1921, which met immediately after
the adoption of the Constitution of that year,
interpreted the clause above quoted, allowing
an *equitable* reimbursement to parishes
"when said system (of public highways) shall
have been completed," to mean when said
highway system shall have been completed,
*not as a whole*, but in each several parish;
for it provided, in section 36 of the act under
consideration that "in those parishes that
have heretofore constructed roads and in-
curred debt for such purpose, by the pledge
of the license tax on motor vehicles, the re-
mainder of said debt, as the installments
shall mature, shall be paid from the general
highway fund  * * *  " (except that for
the year 1921 the amount of such payments
should be limited to the amount collected in
said parish). Hence the *last part* of clause
(A) aforesaid, of the title.

## III.

[2] Reverting now to the title of Act 120
of 1921, it will be seen at once that the main
object of said act is, "to carry into effect sec-
tion 22 of Article six of the Constitution of
Louisiana for the year 1921."

*That* was the primary and main *purpose*
of the act; without which it would not have
been passed.

*That* is the primary and main *title* to the
act, to which the rest is only complementary
and subordinate.

But since the constitutional article which the Legislature proposed to "carry into effect," the substance whereof we have given above, is a provision directing that the general highway fund *shall be derived* from certain sources, above mentioned, it follows that the main purpose of Act 120 of 1921 (Extra Sess.) is to raise a general highway fund in the manner directed by the Constitution.

And hence, whatever is contained in said act, and not germane to said purpose, if anything, is therefore only extraneous matter superadded thereto. Which simply requires that so much of the act as is not germane to the main and evident purpose thereof be rejected and expunged from the act, but does *not* require that the *whole act* be declared unconstitutional as having two *distinct* and *independent* purposes.

### IV.

Let us consider *the object* of the constitutional provision which relator invokes. It first appeared in the Constitution of this state as article 118 of the Constitution of 1845.

In Walker v. Caldwell, 4 La. Ann. 297, decided in 1849, this court said:

"It has become the fundamental law of the state that every law enacted by the Legislature shall embrace but one object, and that that object shall be expressed in the title of the law. * * * The condition of our statute law [under the former Constitution, of 1812, which contained no such provision] was such, at the time of the formation of the Constitution [of 1845], as to impose on the convention the necessity of providing in the Constitution itself for the forms of legislation.

"The title of an act often afforded no clue to its contents; important general provisions were found placed in acts private or local in their operation; provisions concerning matters of practice or judicial proceedings were sometimes in the same statute with matters entirely foreign to them; the result of which was that, on many important subjects, the statute law had become almost unintelligible, as they whose duty it has been to examine, or to act under it, can well testify. To prevent any further accumulation to this chaotic mass was the object of the constitutional provision under consideration. * * * *".

But the court soon found that more harm than good would result from "an interpretation of the constitutional clause *too rigorous and technical.*"

"If in applying it, we should follow the rules of a nice and fastidious verbal criticism, we should often *frustrate the action of the Legislature, without fulfilling the intention of the framers of the Constitution.* That intention has been repeatedly subject of judicial comment." Succession of Lanzetti, 9 La. Ann. 329. (Italics ours.)

Hence, in Municipality v. Michoud, 6 La. Ann. 605, this court said:

"The title of the act is 'An act to provide for the payment of the debts of the municipalities of New Orleans.' * * *

"It is urged, that these provisions embrace several different and distinct objects, and render the act in which they are found, unconstitutional and void *in toto.* * * * We are not prepared to say, that any of the provisions of this act are unconstitutional. Some provide the means of raising a fund to pay the debts of the municipalities, and the others are intended to secure the appropriation of the fund thus raised to that object. But if it were true, that some of the sections fall under the constitutional prohibition, this would not render the act entirely null. When portions of a law come within the reasonable intendment of its title, and others do not, *the latter alone are unconstitutional,* provided they [the different parts] can stand separately." (Italics ours.)

In State v. Hackett, 5 La. Ann. 91, this court said:

"Previous to this act [of 1848], the statutes on that subject provided fully for the discovery, arrest and custody of runaway slaves; depots were established at different points in the state, and certain municipal corporations were authorized to employ the said slaves at labor, on their public works. They formed a system of police for this class of prisoners.

"The law, which it is contended changes this system and makes the prison of each parish the sole place of custody of runaway slaves, was passed on the 16th of March, 1848. It is entitled an act 'to regulate and define the fees to be paid by owners of runaway slaves for the taking up and confinement of the same,' etc. [We

are bound to consider the letters, *etc.*, in an act as having no meaning under our Constitution.]

"It is contended that this act is unconstitutional, it being in conflict with the 118th article of the Constitution, which provides that 'every law passed by the Legislature shall embrace but one object, and that shall be expressed in the title.'

"This statute, purporting to regulate and define the fees to be paid for the arrest and confinement of slaves, in its first section provides, that every person taking up a runaway slave, shall immediately convey the same before the nearest justice of the peace, who shall either commit said slave to the parish prison, or send him to the owner, employer or overseer, if known; who shall pay the person taking him up, *the rates hereafter specified*, to wit, etc.

"Thus we see, that by making the parish prison the place of custody for runaway slaves, the legislation on this subject, which dates as far back as 1806, is *completely and radically changed*. In the fifth section of this statute it is made expressly applicable to all incorporated towns and cities.

"This being the *effect* of the statute [to wit, to completely and radically change the former legislation as to the custody of runaway slaves], what other *object* can be attributed to it, under a serious and sound construction?

"The object of this law, then, was to make a new provision for the custody and security of runaway slaves, *to which the fees for their caption and support were infinitely subordinate.* * * *

"Had the title of this act been generally for the arrest and custody of runaway slaves, everything *germane to that object* would be fairly included under such a title; but the difficulty is, that the provision of this statute [*title*] to regulate and define fees, appears to exclude *the general and sweeping object of the statute itself.* * * *" (Italics ours.)

The *main provisions* of the statute (to wit, those changing the former legislation as to the custody of runaway slaves), were therefore declared invalid, because the *title* of the act did not express the *main object* thereof; the court reserving judgment, however, *as to the rest of the statute*.

Here, then, we have the court finding a statute to have one *main*, "general sweeping" object, to which its other provisions were *"infinitely subordinate,"* and holding the *main provisions* of the statute invalid because the

*main object* was not expressed in the title of the statute, but declaring, however, that, had that main object *alone* been expressed in the title, the statute would have been valid even as to all other provisions, provided only that they were *germane to that main object.*

### V.

We therefore repeat that the main, declared, and evident, purpose of the statute, presently under consideration, to which any other provision, not germane, is "infinitely subordinate," was, emphatically, "to carry into effect section 22 of article six of the Constitution of Louisiana for the year 1921" by complying with the mandatory provisions thereof, requiring that the general highway fund "shall be derived" from certain designated sources.

And the *first paragraph* of that title would *alone* have sufficed for all the main provisions of the act intended "to carry into effect" the constitutional article, as well as for all other provisions *germane to that object.* So that the *second paragraph* of the title was wholly *superfluous*, in so far as concerns the main provisions of the act and all other provisions *germane* thereto.

But as there *is* a second paragraph to that title, serving as it were as a secondary or *subordinate* title and index, not so much to what should be, but to what actually is, found in the body of the act, we refer to it for convenience.

### VI.

[3] (1) Manifestly, all those provisions of the act which come within clause (A) of the *subordinate* title of the act are *germane* to the main purpose of the statute and *included* under the primary or *principal* title thereof, thus:

(A) "To impose an annual graded license tax upon all motor and other vehicles using the public highways of the state. Designating the secretary of state to collect such license tax, and defining his powers and duties in connection therewith and to authorize in certain cases, the

return of the whole or a part of the license taxes to certain parishes."

(2) Clearly also all those provisions which come within clause (B) seem germane to the main purpose, since they facilitate the collection of the tax, thus:

(B) "To define, control and regulate motor and other vehicles, their registration, use and operation, which may be used on the public highways of the state."

(3) Patently, however, all those provisions which find their place in the statute *only* by reason of their coming within clause (C) are *not* germane to the main purpose of the act, but, on the contrary, *wholly foreign thereto*, since they in no way relate to or facilitate the collection of the tax, and concern only the *policing* of the public highways; thus:

(C) "Giving the Louisiana Highway Commission full authority to make the necessary rules governing and controlling the registration of chauffeurs and dealers, vesting the said commission with power to provide or cause to be provided proper safeguards on highways, bridges and vehicles, and to make rules and regulations affording proper protection to life and property."

We are *not* here saying that the Legislature may not confer all such authority, and vest all such power, in the highway commission; *far from it*. We are simply recognizing that, by the very plain provisions of the Constitution, the people themselves, masters of us as well as of the Legislature, have in their wisdom and power solemnly ordained that *one statute* shall include but *one purpose;* leaving *us* no other alternative than to strike with nullity any statute which includes *more than one* purpose; and are here only pronouncing our conclusion that the statute under consideration includes *but one purpose*, and is therefore constitutional, but that the matters covered *only* by clause (C) aforesaid are *not germane* to that purpose and must therefore be expunged and stricken from the statute, otherwise the statute would include *two purposes*, and we would be compelled to declare *the whole statute* unconstitutional. The granting of such authority to and the vesting of such power in the highway commission, must be by appropriate legislation, appropriately entitled, and cannot be included in a statute purposing "to carry into effect section 22 of article 6 of the Constitution of Louisiana for the year 1921," by complying with the mandatory provisions thereof requiring that the general highway fund "shall be derived" from certain designated sources.

[4] (4) Equally clear must be the fate of those provisions of the statute covered by clause (D) as follows:

(D) "Providing punishment and penalties for infraction of any section or sections of this or any other act pertaining to highways of the state."

Certainly in so far as the statute provides punishment and pronounces penalties for the infraction of its own *valid* portions, those penalties are clearly valid and enforceable. On the other hand, punishment and penalties clearly cannot validly be inflicted for infraction of those provisions of the statute which are themselves invalid. And *manifestly* no punishment and penalties can be inflicted *under this act* for the infraction of "any other act pertaining to highways of the state"; for then the statute would include in its penal feature as many distinct and different purposes as there are "other acts pertaining to highways of the state."

## VII.

We are not called upon in this case to analyze and review in detail all the provisions of this lengthy statute, and declare what particular provisions thereof are, and what are not, germane to the main and declared purpose of the act and included in clauses (A) and (B) of the subtitle thereof. Suffice it to say that they are distinguishable almost at a glance.

But it is apparent on a mere reading of clause (C) of the subtitle of the statute that the offense with which this relator is charged finds its place in the statute only because it is included in said clause. And we have stated that the matters included in clause (C) are wholly foreign to the object of the statute, and must therefore be expunged and stricken from the statute.

Hence it follows that relator has violated no *valid* law of this state, and is therefore entitled to be discharged.

### Decree.

It is therefore ordered that the writs of certiorari and prohibition herein issued be now perpetuated, and that relator be and he is hereby *discharged*.