(173 La. 807)

## STATE ex rel. HARVEY v. STANLY.

### No. 31084.

Supreme Court of Louisiana.

March 30, 1931.

On the Merits, Nov. 30, 1931.

Sidney I. Foster and Fern M. Wood, both of Leesville, for appellant.

Thompson & Ferguson, of Leesville, and Frank E. Powell, of De Ridder, for appellee.

### On Motion to Dismiss.

ROGERS, J.

The relator, Thomas L. Harvey, instituted this suit under Act 102 of 1928, alleging, in substance, that the respondent, Finly Stanly, was discharged as parish superintendent of schools by the school board of Vernon parish on January 2, 1931, thereby creating a vacancy in that office; that relator was elected to the office for the remainder of the term, expiring July 1, 1933, and immediately qualified and performed the duties thereof during the remainder of the session. Relator also alleges that the respondent refused to vacate the office and deliver to him possession of its books, keys, files, and other property, notwithstanding he was lawfully elected parish superintendent of schools of Vernon parish and, as such, is lawfully entitled to the possession of the said office together with all the property and effects thereto belonging; that respondent's acts constitute an unlawful intrusion therein, and an unlawful attempt to remain in possession thereof, to the prejudice and jeopardy of relator's rights. Relator further alleges that the emoluments of said office for the term for which he was elected are worth in excess of $2,000; the petition showing, as matter of fact, that the salary of the office was fixed at the sum of $3,240 per year, payable monthly.

Respondent filed an exception of no cause of action to relator's petition. The court below sustained this exception and dismissed the suit. Relator appealed, and respondent has moved to dismiss the appeal.

■ Respondent alleges, in his motion to dismiss, that under article 7, §§ 10 and 29, and article 9, § 7, of the Constitution, the Court of Appeal for the First Circuit, and not this court, is vested with jurisdiction to entertain relator's appeal.

Respondent's contention that this suit is governed by article 9 of the Constitution is untenable. That article deals exclusively with the impeachment and removal from office of those officers who are guilty of high crimes and misdemeanors in office, incompetency, corruption, favoritism, extortion, or oppression in office, or of, "gross misconduct, or habitual drunkenness." Section 1. The present suit is between private parties to have judicially determined which one of the litigants is entitled to the office in dispute. Hence the question of which court is vested with appellate jurisdiction in the case must be tested by the provisions of article 7 of the Constitution. The constitutional provisions

to be reviewed are sections 10, 29, and 35 of the article.

Section 35, article 7 of the Constitution, grants exclusive jurisdiction to the district courts in all cases where the "right to office, or other public position, or civil or political rights are involved." Section 10 vests this court with jurisdiction in all cases in which the amount involved exceeds $2,000, exclusive of interest. Section 29 confers jurisdiction on the Courts of Appeal in civil cases where the district courts are given exclusive original jurisdiction and of which this court is not granted jurisdiction.

Respondent argues that relator has failed to allege that there is any amount in dispute between them, and that the present suit is, in effect, nothing more than a proceeding by mandamus to compel respondent to deliver to relator the room occupied as an office, the books, papers, files, keys, and other property appertaining to the position of parish superintendent of schools.

But respondent concedes, and he could not well do otherwise, that the proceeding involves the title to the office of parish superintendent of schools. The first article of respondent's motion to dismiss the appeal is in the following words, viz.: "That this is a suit seeking to remove your Respondent, Appellee, from the office of Parish Superintendent of Schools of the Parish of Vernon and involves, as between the Appellant and your Respondent, Appellee, the title to said office." It is true that in the second article of the motion respondent alleges that the emoluments of the office are not involved in the suit. But it is difficult to understand how the title to an office can be in contest without involving in the contest the right to the emoluments, records, and other property of the office. Certainly, as the title to the office vests so vests the right to the emoluments, records, and other property of that office.

Neither the relator nor the respondent pretends that he has any personal ownership of the papers, records, and other property belonging or appertaining to the office of the parish superintendent of schools. The incidental claim of each to these effects is based solely on his primary claim to the office itself. If relator is not entitled to the effects, it can only be because he is not entitled to the office to which the effects belong; and, if he is not entitled to the office, he is certainly not entitled to the emoluments thereof. On the other hand, the respondent can only retain the effects if he is entitled to the office to which the effects belong; and, if he is entitled to the office, he is certainly entitled to the pecuniary benefits attached thereto. So that the suit, as disclosed by the pleadings taken as a whole, is one to determine which of the parties litigant has the better right to the office of superintendent of schools for the parish of Vernon. It is alleged and not disputed that the emoluments of the office in question exceed $2,000. Hence this court has jurisdiction of the appeal in the case. State ex rel. Rogers v. Parsons, 120 La. 263, 45 So. 125.

For the reasons assigned, the motion to dismiss the appeal is denied.

### On the Merits.

Thomas L. Harvey, the relator, appeals from a judgment dismissing his suit on an exception of no cause of action. The suit was instituted under the provisions of Act 102 of 1928, and its purpose is to have determined who of the parties litigant is entitled to the office of superintendent of schools for the Parish of Vernon.

The respondent, Finly Stanly, was the duly elected and qualified superintendent of schools for Vernon parish on and prior to January 2, 1931. On that date the Vernon parish school board met, and, after declaring by resolution that the majority of the board was out of harmony with the parish superintendent and for other causes not necessary to mention, but sufficient for the purpose, under the authority of section 19 of Act 100 of 1922, the employment of Finly Stanly as parish superintendent was terminated and the office declared vacant. By the same resolution, Thomas L. Harvey was elected as parish superintendent of schools for the remainder of the term, ending July 1, 1933. Harvey immediately qualified by taking the oath and furnishing bond, and was seated as superintendent by the school board, functioning as such during the remainder of the session. Stanly, however, refused to vacate his office and to deliver into Harvey's possession its books, files, keys, and other property, and this suit was instituted to compel him to do so.

Section 19 of Act 100 of 1922, p. 210, on the authority of which the school board purported to act, reads in part as follows, viz.:

"If at any time a parish superintendent shall be found incompetent, inefficient or unworthy, he shall be removable for such cause by a majority vote of the membership of the parish school board at any regular meeting or at any special meeting after due notice."

Respondent contends that the quoted statutory provision is unconstitutional and the action of the school board based thereon is null and void. The right of the respondent to urge the contention under his exception of no cause of action is not contested by the relator, who, in his brief, specifically waives any objection thereto, and expressly requests the court for a ruling on the question of whether parish school boards are empowered to discharge parish superintendents.

Respondent contends that a parish superintendent of schools is a public officer, created by the Constitution and removable only by the method therein provided. He

argues, therefore, that the third paragraph of section 19 of Act 100 of 1922, hereinabove quoted, is unconstitutional, because it prescribes a method not authorized by the Constitution for the removal of a public officer.

The respondent, Stanly, relies on the cases of State v. Theus, 114 La. 1097, 38 So. 870, and State v. Hardin, 123 La. 736, 49 So. 490, 491, as supporting his contention that a parish superintendent of schools is a public officer. These decisions were rendered under the Constitution of 1898, and respondent argues their applicability to the issue presented here, because of the similarity of article 250 of the Constitution of 1898 to section 10 of article 12 of the Constitution of 1921, relative to the election of parish superintendents by parish school boards. And he also argues that, as a consequence of his being a public officer, a parish superintendent can only be removed in the manner provided by article 9 of the Constitution of 1921.

Section 6 of the article provides that any officer, whether state, parochial, or municipal, except the Governor and Lieutenant Governor and the judges of the courts of record, may be removed from office by a judgment of the district court of his domicile, for any of the causes for which, under section 1 of the same article, all state and district officers are subject to be impeached; that is to say, for high crimes and misdemeanors in office, for incompetency, corruption, favoritism, extortion, oppression in office, gross misconduct, or habitual drunkenness.

But these provisions for the impeachment or removal of public officers are applicable only to an officer elected by the electors of the state or of the district, parish, ward, or municipality in which the officer functions, or to an officer appointed by the Governor. They were not intended to be applied to subordinate officers employed or elected by local administrative or executive boards or commissions, so as to deprive the Legislature of the power to provide for a prompt removal for causes it might deem sufficient of such subordinate officer by the board or commission by whom he was employed or elected.

A parish superintendent cannot be regarded as a public officer, within the meaning of section 6 of article 9 of the Constitution of 1921, providing for the removal of a public officer by the judgment of the district court of his domicile.

Section 13 of article 8 of the Constitution declares that no person shall be eligible to *any office*, whether state, district, parochial, ward, or municipal, unless he is a citizen of the state and *a duly qualified elector* of the state, district, parish, ward, or municipality in which the functions of his office are to be performed. Section 10 of article 12 declares that a parish superintendent of schools *need not be a resident of the* parish in which the

functions of his office are to be performed. The same provision is contained in section 19 of Act 100 of 1922. That is the equivalent of saying that a parish superintendent of schools need not be an elector of the parish; because, according to section 1 of article 8 of the Constitution of 1921, a person cannot be an elector of a parish unless he is, and has been for a year, an actual and bona fide resident of the parish, and unless he is and has been for two years an actual and bona fide resident of the state. Hence, when the Constitution of 1921 declares that a parish superintendent of schools need not be a resident of the parish, it, in effect, declares that a parish superintendent of schools shall not be deemed a public officer, because he cannot be a public officer without being a resident of the parish.

It must be borne in mind that, under section 6 of article 9 of the Constitution of 1921, a public officer can be removed only for one of the causes for which, under section 1 of the article, a state or district officer may be impeached, and only by a decree of the district court of his domicile. And an anomalous situation would be created by the attempt of the district court of the superintendent's domicile to remove him from his employment as superintendent of schools of another parish of the state.

The decisions in State v. Theus and State v. Hardin, referred to supra are not appropriate to the present case, because they were rendered before there was any constitutional or statutory provision that a parish superintendent of schools need not be a resident of the parish. Moreover, in the Theus Case, as the opinion therein shows, the proposed suit to remove the parish superintendent of schools was predicated on section 2593 of the Revised Statutes, now Act 102 of 1928, providing against intrusion into office, and not on articles 217 and 221 of the Constitution of 1898, which are the predecessors respectively of sections 1 and 6 of article 9 of the Constitution of 1921. And in the case of State v. Hardin, the court said, referring to parish school boards: "They are required to appoint the superintendents for terms of four years, and *they may remove them for cause;* but they have no authority to appoint a superintendent for a shorter or a longer term than four years, *or to remove a superintendent, once appointed, without cause."* (Writer's italics.) This statement, perhaps, was not necessary to a decision of the case, but it was nevertheless a recognition of the powers of school boards in the appointment and removal of parish superintendents.

The respondent also contends that the third paragraph of section 19 of Act 100 of 1922, which we have hereinabove quoted, is unconstitutional, because in attempting to confer upon parish school boards the power to remove parish superintendents the legisla-

848

tive provision is broader than the title of the act warrants. This contention is untenable.

The title of the statute reads as follows, viz.:

"To provide a State Board of Education and Parish school boards, defining their duties and powers, and providing for the administration and supervision of the public schools of Louisiana."

The legislative act includes but one broad comprehensive object, and that is the administration and supervision of the public schools of the state. Its provisions embrace the means for the accomplishment of that object. The removal of parish superintendents, as well as their election, by parish school boards, constitute an important and necessary part of the administration and supervision of the state's school system. And the section of the legislative act authorizing such removal falls within its title.

The respondent cites State v. Capdevielle, 135 La. 671, 65 So. 890, and State v. Fobbs, 160 La. 237, 106 So. 840, in support of his contention. But these cases are not appropriate.

In State v. Capdevielle, the statute attacked authorized the Governor to remove a state officer, whereas the Constitution provided that such removal should be by address of the Legislature. The title of the act (No. 112 of 1910) is, "An Act to put into effect Article 194 of the Constitution of 1898," etc. The court very properly held that the statute went further than its title; because it provided for the removal of the officer in question in a manner and by a governmental department different from those directed by the Constitution.

In State v. Fobbs the defendant was prosecuted for operating a motor vehicle on the public roads without first obtaining a chauffeur's license, contrary to sections 25 and 35 of Act 120 of 1921, Ex. Sess. He pleaded the unconstitutionality of the statute, on the ground that it embraced two distinct objects. The court held that the main purpose of the legislative act is to raise a general highway fund from certain designated sources, and that the fees exacted for registering licensed chauffeurs were not one of those sources. The court further held that the statute included but one purpose, and was therefore constitutional, but that the clause under which a chauffeur's license was exacted of defendant was not germane to that purpose, and expunged it from the statute.

Our conclusion is that the third paragraph of section 19 of Act 100 of 1922 is not amenable to the attack of unconstitutionality leveled at it by the respondent. This conclusion on our part necessarily brings before us for consideration respondent's alternative contention in support of his exception; name-

ly, that the statutory provisions have not been followed in his attempted removal by the school board.

Respondent's legal proposition is that under the express terms of the statute the school board must first find that he is "incompetent, inefficient or unworthy" before it can remove him. Relator's counter legal propositions are, first, that the action of the school board in removing respondent cannot be attacked collaterally; and, second, that the courts are without jurisdiction to inquire into the school board's action at all.

In support of his first proposition, relator cites State ex rel. Kuhlman v. Judge, 47 La. Ann. 53, 16 So. 776, and in the Matter of Carp, 179 App. Div. 387, 166 N. Y. S. 243. And, in support of his second proposition, relator cites, State v. Graham, 25 La. Ann. 73; State v. Hufty, 11 La. Ann. 303; State v. Abbott, 41 La. Ann. 1096, 6 So. 805; State ex rel. Kuhlman v. Judge, supra; and Jumonville v. Police Jury, 4 La. App. 580.

We have not read the decision in the New York case, but we have read the other cases, and do not find them appropriate. For instance, in the Kuhlman Case, Kuhlman, the new appointee, had actually taken possession of the office, when Cambre, the former incumbent, sought to restrain him from doing so, and therefore the allegation that Cambre feared he would seek to take forcible possession of the same was without foundation. And in the case of Jumonville v. Police Jury, the law had placed no restrictions on the police jury's power of amotion.

The statute under review provides three causes for which the school board may remove the parish superintendent, namely, "incompetency, inefficiency or unworthiness." Relator predicates his suit entirely on the resolutions of the parish school board, which are set out in full in his petition. The first reason given in the resolution of the school board for respondent's removal is that the majority of the board is "out of harmony with him"; and the second reason assigned in the resolution for such removal is, "other causes pertaining to the administration of his office not necessary to name herein but sufficient, in the opinion of this board, to warrant this action."

Respondent contends that the specifications, in the third paragraph of section 19 of Act 100 of 1922, of the causes authorizing the removal of a parish superintendent of schools are restrictive, and that consequently a removal for any other cause is unauthorized. There can be no question of the soundness of this contention. See State v. Cyr, 124 La. 603, 50 So. 595, wherein the question involved was almost identical with the question presented here. In that case the right of the Governor to remove school directors was claimed to have been exercised by the re-

moval attempted to be made by the state board of education at a meeting at which the Governor was present and concurred in the proceedings. Act ·214 ·of 1902 provided that the Governor could remove school directors for "incompetency, neglect of duty, or malfeasance in office." Section 6. There, as set forth in the resolution of the state board of education, the attempted removal was because of "the deplorable condition of the school affairs in the parish." And this court declared that the reason assigned was not one of the causes enumerated in the statute authorizing the removal of the members of the board. The court pointed out, in its opinion, that such condition might have been brought about by causes entirely disconnected with any "incompetency, neglect of duty, or malfeasance in office." And in this case, for aught we know, the lack of harmony between respondent and the parish school board, and the other causes pertaining to the administration of the superintendent's office, might have been brought about by no act of omission or commission on the part of respondent.

The decision in the Cyr Case would seem also to dispose of relator's contention that the resolution of the school board purporting to remove respondent cannot be attacked collaterally, because it is plain that, if the causes specified in the statute authorizing the removal are restrictive, then a resolution which does not set forth any of those causes, but sets forth causes not specified in the statute, is invalid on its face.

In Jackson v. Powell, 119 La. 882, 44 So. 689, where the Governor removed the members of a parish school board from office and appointed a new board, the court held that the old board, being unwilling to surrender their office, could not be dispossessed by the exercise of the power of removal and the appointment of their successors, but only by an intrusion into office suit. In such a case the members of the old board were entitled to protect their possession by an injunction.

So in the case presently before us respondent would have been entitled to protect his possession of the office of parish superintendent by an injunction, but he apparently did not choose to avail himself of that remedy. He preferred, evidently, to defend his title to the office in an intrusion into office suit which his alleged successor was certain to bring against him. And it would seem to be almost too plain for argument that in such a suit the respondent can protect his possession and defend his title by setting up illegalities in his opponent's title, even though such a defense involves a collateral attack upon the appointing power. Otherwise what would become of his possession? It would present an anomalous situation to compel an incumbent made defendant in an intrusion into office suit to surrender his office, when his defense is that the action of the appointing power in removing him is illegal, and force him to test his right to the office by filing a suit directly against the appointing power to annul its action, and then, if he is successful in that suit, to require him to file another suit against the adverse claimant for possession of the office.

Our opinion is that respondent's alternative contention is well founded and adequately supports his exception of no cause of action.

For the reasons assigned, the judgment appealed from is affirmed.

OVERTON, J. (concurring).

I concur in the foregoing opinion, but not in the ruling that a parish superintendent of schools is not a public officer, nor in the reasoning on which that ruling is made to rest.

The case of State v. Theus, 114 La. 1097, 38 So. 870, is, in my view, authority for the proposition that a parish superintendent of schools is a public officer. This decision, which so holds, cannot be differentiated properly from the case at bar on the theory that it was rendered under the Constitution of 1898, whereas the present case arises under the Constitution of 1921. The Constitution of 1921 makes it even stronger than does the Constitution of 1898 that a parish superintendent is a public officer. This appears from merely quoting the pertinent articles of the two Constitutions.

Article 210 of the Constitution of 1898 reads that:

"No person shall be eligible to any office, State, judicial, parochial, municipal, or ward, who is not a citizen of this State and a duly qualified elector of the State, judicial district, parish, municipality or ward, wherein the functions of said office are to be performed. * * * "

Article 250 of the Constitution of 1898 reads that:

"The General Assembly shall provide for the creation of a State Board, and Parish Boards of Public Education. The Parish Boards shall elect a Parish Superintendent of Public Education for their respective parishes, whose qualifications shall be fixed by the Legislature, and who shall be ex-officio secretary of the Parish Board. The salary of the Parish Superintendent shall be provided for by the General Assembly, to be paid out of the public school funds accruing to the respective parishes."

As to the Constitution of 1921, section 13 of article 8 thereof reads, so far as pertinent, that:

"No person shall be eligible to any . office, State, district, parochial, municipal or ward, who is not a citizen of this State and a duly

qualified elector of the State, district, parish, municipality or ward, wherein the functions of said office are to be performed. * * * Provided further, that this article shall not apply to superintendents of public schools."

Section 10 of article 12 of the Constitution of 1921, reads, so far as pertinent, that:

"The Legislature shall provide for the creation and election of parish school boards which shall elect parish superintendents for their respective parishes, and such other officers or agents as may be authorized by the Legislature. The State Board of Education shall fix the qualifications and prescribe the duties of parish superintendents, who need not be residents of the parishes. * * * "

The only difference between the Constitutions of 1898 and 1921, with reference to parish superintendents, pertinent here, is that, under the Constitution of 1898, the qualifications of parish superintendents were required to be fixed by the Legislature, whereas, as appears from section 13 of article 8 and section 10 of article 12 of the Constitution of 1921, construed together, the qualifications of parish superintendents are required to be fixed by the state board of education; article 12, § 10, making it unnecessary to require residence as a qualification. However, making the usual requirement of residence unnecessary as to parish superintendents, or even dispensing with it altogether, does not justify the conclusion that one holding that position is not an officer. 46 C. J. p. 938, § 34. To the contrary, the very reason why parish superintendents are excepted from section 13 of article 8 of the Constitution of 1921 is that the framers of the Constitution regarded them as officers; for the section treats of officers, not mere employees.

This is made clearer by section 10 of article 12 of that Constitution, which provides that parish school boards "shall elect parish superintendents for their respective parishes, and such *other officers* or agents as may be authorized by the Legislature." (Italics mine.) The expression "other officers," following the word "superintendents," shows that the Constitution classifies "superintendents" as officers.

The fact that the Constitution provides that the state board of education shall fix the qualifications of parish superintendents, and does so in connection with the dispensing of the necessity of residence as a qualification—a qualification usually applicable to officers alone—coupled with the fact that the Constitution refers to a parish superintendent as an officer, though it does so in connection with "agents," shows that the Constitution classifies a parish superintendent as an officer. Moreover, a parish superintendent exercises a part of the sovereignty of the state in superintending the public schools of his parish, and for that reason also must be regarded as an officer.

As a parish superintendent is an officer under the Constitution of 1921 as well as under the Constitution of 1898, the Theus Case, cited supra, cannot be differentiated from it on that ground. Moreover, the Theus Case cannot be differentiated from the present case on the ground that the object of the two cases is different. Each is brought under the Intrusion into Office Act. Neither has for its object the removal from office of an incumbent under article 222 of the Constitution of 1898, or under section 6 of article 9 of the Constitution of 1921, relative to removal of public officers for high crimes and misdemeanors and the like.

The correct reason, in my opinion, why section 6 of article 9 of the Constitution is not applicable to this case, is not because a parish superintendent is not an officer, nor because he is not an officer within the intendment of section 6 of article 9 of the Constitution, if that be the view of the majority, but because that section is not controlling as to the removal of officers elected by governmental boards, but such boards remove officers elected by them in the manner directed by the Legislature. This has always been the case, and there appears nothing in the Constitution to prevent the Legislature from authorizing parish school boards, which it has done, to remove superintendents, elected by them, for prescribed causes.

Approving the opinion in other respects, I concur in the decree.