ODOM, Justice.
 

 In October, 1930, the defendant became indebted to the Metropolitan Life Insurance Company in the sum of $18,000, for which he executed a note secured by mortgage on his residence in the city of New Orleans. He failed to pay certain installments due on the principal of the debt, as well as interest, and on June 7, 1934, the insurance company brought foreclosure proceedings by executory process. Defendant’s property was seized and advertised for sale. Pending these proceedings the Legislature, at its regular session of 1934, adopted Act No. 159, known as the “Mortgage Moratorium Law.” Whereupon the defendant and his wife, who had acquired the property from her husband by dation en paiement, filed their petition in the district court wherein the proceeding was pending, praying that the insurance company be ruled to show cause why the sale should not be postponed and the laws relative to such foreclosures be temporarily suspended in accordance with the provisions of that act. They alleged that, due to no fault of theirs, but due to the severe financial and economic-depression then existing, they were then, and had been for several years, unable to meet their payments on the mortgage sought to be foreclosed, as well as the taxes due on the property, that they had sought with no-avail further time in which to make their payments, and that they were entitled to a stay of execution as provided by the act.. They deposited in court $64.15, the amount of accrued costs, and prayed for judgment temporarily suspending the laws relative to-foreclosure proceedings and ordering that the sale of their property be postponed.
 

 The mortgagee came into court in obedience to the rule to show cause and filed exception to the debtors’ petition for a stay of execution on the ground that it set out no right or cause of action because Act No. 159-of 1934 known as the “mortgage moratorium law,” invoked by the debtors, is unconstitutional, being in contravention of sections 2 and 6 of article 1, section 15 of article 4, of the Louisiana Constitution, and section 10,. art. 1, of the Constitution of the United States. (
 

 Reserving the benefit of this exception, the mortgagee filed answer admitting the allegations of the debtors’ petition, except those to the effect that the debtors were unable to pay the installments and interest due on the mort-' gage and that they were entitled to a stay of execution. It set out in detail the items past due on the indebtedness as well as amounts due for taxes and insurance, all amounting to $5,823.59. It alleged that the debtors were occupying the mortgaged property as a residence, and that a reasonable rental value thereof was $200 per month, which amount it
 
 *282
 
 asked the court to order them to pay in case the stay should be granted.
 

 The trial resulted in a judgment decreeing Act No. 159 of 1934 valid and constitutional and overruling the mortgagee’s exception. On the merits, there was judgment staying and postponing further execution of the writ ■of executory process on condition that the debtors pay to the mortgagee $200 per month, which was fixed as the reasonable rental value of the property, said amount to be applied (1) toward the payment of past due taxes; (2) toward the reimbursement of insurance premiums advanced by the mortgagee and such as may be advanced by it during the term of the postponement; (3) to the payment of interest already accrued on the mortgage or which may accrue during the term of the stay granted.
 

 It was further ordered that, in addition to the $200 per month, the debtors should, not less than five days before either the city of New Orleans or the state commences to advertise property for sale for delinquent taxes, pay to plaintiff such further amount or .amounts as, added to the payments theretofore made under the judgment and not already applied in accordance with the terms of the judgment, may be sufficient to pay in full the taxes for which the property is to be, ■or is being, advertised, so as to prevent or stop the advertisement and sale. It was ordered that the stay and suspension granted should in no event extend beyond May 11, 1936, the limit set by the statute.
 

 • The mortgagor appealed from this judgment. The mortgagee answered the appeal, praying that their exception filed in limine, which was overruled, be sustained, and that Act No. 159 of 1934 be declared unconstitutional on the ground that “said act is in contravention of the Constitution of the State 'of Louisiana and the Constitution of the United States of America, and particularly of art. 1, Secs. 2 and 6, art. 3, Sec. 16, art. 4, Secs. 4 and 15, of the Constitution of Louisiana and art. 1, Sec. 10 and the Fifth and Fourteenth Amendments to the Constitution of the United States.”
 

 Constitutionality of the Act.
 

 Act No. 159, p. 525, Regular Session of 1934, is an act (quoting its title)—
 

 “Authorizing the suspension of all laws or parts of laws, including provisions of the Civil Code and the Code of Practice, relative to judicial sales of mortgaged real estate by virtue of writs of seizure and sale under ex-ecutory process, or writs of fieri facias under executions where judgment is obtained via ordinaria, or sales under foreclosure of mortgages on real estate in any other manner, in certain cases during the emergency declared to exist, in order to prevent inequitable foreclosures of mortgages on real estate and judicial or execution sales of real estate, and providing for the jurisdiction and procedure for such suspensions and for the right to possession of mortgaged real estate during such suspension.”
 

 Immediately following the title is a general and extended statement that the severe financial and economic depression existing for several years past has resulted in extremely low prices for products of farms and factories and for real property, a vast amount of unemployment, an almost complete
 
 *284
 
 lack of credit for farmers, business men, and property owners, and a general and extreme stagnation of business, agriculture, and industry; that many owners of real property, by reason of said conditions, are unable, and, it is believed, will for some time be unable, to meet all payments as they come due for taxes, interest, and principal of mortgages on tbeir properties, and are therefore threatened with loss of such property through mortgage foreclosure and judicial sales thereof, and that many such properties have been, and are being, bid in at judicial and execution sales for prices much below that which is believed to be their real values, and often for much less than the mortgage indebtedness, thus entailing deficiency judgments against mortgage debtors, and that it is believed, and “the Legislature of Louisiana hereby declares its belief,” that the conditions existing have created an emergency of such nature as justifies and validates legislation authorizing the suspension of all laws, including provisions of the Civil Code and the Code of Practice relating to judicial sales of mortgaged real estate by virtue of writs of seizure and sale under executory process, etc., and that;
 

 “Whereas, the State of Louisiana possesses the right under the police power to declare a state of emergency to exist, and the Legislature of Louisiana possesses the power and the right, under Section 5 of Article XIX of the Constitution, to suspend or authorize the suspension of the laws of this State” and “Whereas, the inherent and fundamental purpose of our government is to safeguard the public and promote the general welfare of the people” and “Whereas, it is believed, and the Legislature of Louisiana hereby declares its belief, that the conditions existing as hereinabove set forth have created an emergency of such a nature that justifies and validates legislative authority for the temporary suspension of the laws relative to mortgage foreclosure sales”; therefore, “Be it enacted,”' etc. Then follows the body of the act, which is divided into thirteen sections.
 

 Section 1 declares that its provisions shall not apply to any mortgage held by the United States or by any agency thereof as security or pledge of the maker or his successors or assigns nor to any mortgage held as security or pledge to secure payment of the public-debt or to secure payment of the deposit of public funds.
 

 Section 2 declares that, in view of the situation theretofore set forth, a public economic emergency exists in the state.
 

 Section 3 provides that in any proceeding theretofore commenced for the foreclosure of a mortgage on real estate by executory process, via ordinaria or otherwise, in which a sale of the property has not been had or in any such proceeding thereafter commenced, the mortgagor or owner in possession of the mortgaged premises, or any one claiming under the mortgagor or any one liable for the mortgage debt, may, at any timé after the issuance of notice of foreclosure proceedings, apply to the district court wherein such proceedings are being had, for a rule on the person attempting to foreclose, to show cause why the sale should not be postponed and why the laws relative to such foreclosure should not be temporarily suspended, and that, if it appears to the court that the granting of such relief as prayed for would be equitable and just, the foreclosure proceed
 
 *286
 
 ings may be postponed and tbe laws authorizing the same may be suspended as to such real property.
 

 Section 5 of the act provides that the mortgagee or holder of the mortgage notes may, in answer to the rule, apply to the court for a determination of the reasonable value of the income on said property, or, if the property has no income, then the reasonable rental value thereof, and ask for judgment requiring such mortgagor to pay all or reasonable part of such income or rental value toward the payment of taxes, insurance, interest, or mortgage indebtedness at such times and in such manner as shall be fixed by the court; this as a condition precedent to the suspension of the laws in such case. It is provided that the court shall hear the application and, after hearing, shall in its discretion include in its judgment an order directing the payment by such mortgagor of such an amount at such times and in such manner as to the court shall, under the circumstances, appear just and equitable. It is further provided that, should the debtor default on the payments ordered to be made, the suspension of the laws ordered by the court shall terminate thirty days after the default, and that -thereafter further proceedings to foreclose may be had. The last clause of section 5 reads as follows:
 

 “During the time this Act is in effect, no action shall be maintained in this State for a deficiency judgment where real 'estate has [been] sold at public sale for less than the amount due under the mortgage.”
 

 Section 6 declares that, upon the application of either party prior to the expiration of the suspension granted and upon presentation of evidence that the terms fixed by the court are no longer just and reasonable, the court may revise and alter said terms in such manner as changed conditions may require.
 

 Section 9 of the act provides that in no e.vent shall the laws relating to the foreclosure of mortgages or real estate be suspended beyond the second Monday in May, 1936, and section 10 limits application of the act to mortgages made prior to its passage. Section 11 reads as follows:
 

 “No postponement or suspension or extension shall be ordered under conditions which, under the temporary emergency, would substantially diminish or impair the value of the contract or obligation of the person against whom the relief is sought, without reasonable allowance to justify the exercise of the police power hereby authorized and the power of suspension of laws herein authorized.”
 

 1. The validity of Act No. 159, Regular Session of 1934, known as the “Louisiana mortgage moratorium law,” is contested by the Metropolitan Life Insurance Company, appellee, which sought to foreclose its mortgage on the property of its debtor on the following grounds: (1) That the act is in contravention of the following provisions of the Federal Constitution: (a) Section 10 of article 1, which provides that “no State shall * * * pass any * * * Law impairing the Obligation of contracts”; and (b) the Fifth and Fourteenth Amendments thereto, which provide that no person shall “be deprived of * * * property, without due process of law,” and that no state “shall make or enforce any law which shall * * * deprive any person of * * * property, without due process of law” ; (2) that it vio
 
 *288
 
 lates the following provisions of the state Constitution: (a) Section 2, art. 1, that “no person shall be deprived of life, liberty or property, without due process of law.”; (b) section 6, art. 1, that “all courts shall be open, and every person for injury done him in his rights, lands, goods, person or reputation shall have adequate remedy by due process of law and justice administered without denial, partiality or unreasonable delay”; (c) section 16, art. 3, “Every law enacted by the Legislature shall embrace but one object, and shall have a title indicative of such object” ; (d) section 4, art. 4, that “the Legislature shall not pass any local or special law * * * providing or changing methods for the collection of debts or the enforcement of judgments”; and (e) section 15, art. 4, “No ex-post facto law, nor any law impairing the obligation of contracts, shall be passed.”
 

 2. The statute attached does not violate or impair the obligation which the mortgagor assumed to pay the debt contracted, nor does it affect the right which he granted to the creditor over his property for the security of the debt. The mortgage itself remains the saíne. The real estate mortgaged or bound for the payment of the debt or the fulfillment of the obligation remains bound, and the obligation to pay interest is not disturbed.
 

 The law which grants to mortgage creditors the right and power to foreclose the mortgage, seize the property, advertise, and have it sold at public auction to the highest bidder, and to apply the proceeds to the payment of his debt, is undisturbed. His privilege of acquiring ownership of the mortgaged property by bidding it in for himself at the sale remains the same.
 

 The statute grants to the mortgage creditor during the extended period for foreclosure the benefit of all or a reasonable part of such revenues as the mortgaged property produces, or, if it produces no revenue, then the benefit of the reasonable rental value thereof as the court may determine after hearing. Such revenues or the reasonable rental of the property must be paid by the mortgage debt- or to his creditor at such times or periods and under such circumstances and conditions as the court, in its discretion, may direct, the amounts paid to be applied, first, to the payment of taxes, second, to the payment of insurance, the balance to be applied on the debt. Thus the property bound for the security of the mortgagee’s claim is protected from sale by the municipal or state government for taxes, which carry a higher privilege than that which he enjoys by virtue of his mortgage, and the property is protected against loss by fire. While the mortgagor is permitted to remain in possession during the stay granted, he is not permitted to enjoy that possession without recompense. The law favors him only to the extent of granting him a limited extension of time in which to pay his debt, which time can be extended only through the period of the economic and financial depression which the Legislature declared to exist and because of which he proclaimed his inability to pay. Therefore, while the mortgage creditor may be deprived, during a limited time, of the privilege of collecting the whole of his claim, yet he is permitted during that time to exact of his debt- or the fruits of the things pledged. So that the relief which the statute grants to the debtor is conditional and temporary. It is conditional in that he must, if he retains pos
 
 *290
 
 session, deliver to his creditor the revenues which the property produces, and, if it produces no revenue, then he must pay for the use of it. It is temporary in that the statute provides that in no event can a stay be grant- ■ ed beyond the second Monday in May, 1986, and further that at any time during the stay granted the court may revise, modify, or alter the terms of the judgment upon presentation of evidence by either party that conditions and circumstances have so changed as to warrant the modification.
 

 The statute does not “impair the integrity of the mortgage indebtedness.” The only privilege of which the mortgage creditor is deprived is that of collecting the debt at the time specified in the note and the act of mortgage. The obligation of the contract is impaired to that extent only.
 

 Conceding that legislation which deprives a mortgage creditor of the right to collect his debt at the time agreed upon between him and his debtor is in violation of the contract clauses of, both the federal and state Constitutions, the question is whether the state’ Legislature, under its reserved or police powers, may, due to an emergency brought about by depressed economic and financial conditions, enact legislation which impairs the obligation of contracts to that extent only.
 

 The Legislature set out at length and in detail the conditions upon which it based its finding that an emergency existed, and in section 2 of the act declared that, because of those conditions, “a public economic emergency” did exist, and it is not denied by appellee that the conditions found by the Legislature to exist did in fact exist, and it seems to be conceded that those conditions brought on a public emergency.
 

 Whatever doubts there may have been concerning the power of the states of the Union to enact legislation of this particular character, because of conditions which the Legislature declared in this instance did exist in this state, were set at rest by the decision of the Supreme Court of the United States in Home Building & Loan Association v. Blaisdell et ux., 290 U. S. 398, 54 S. Ct. 231, 235, 78 L. Ed. 413, 88 A. L. R. 1481. In that case the court had under consideration the validity of chapter 339 of the Laws of Minnesota, adopted April 18, 1933, known as the “Minnesota Mortgage Moratorium Law,” which is apparently identical in terms with our “Mortgage Moratorium Law,” except that the Minnesota law extended the time for the redemption of property sold under foreclosure proceedings, whereas ours provides that foreclosures may be postponed beyond the due date of the debt. In fact, it is said that the Louisiana Legislature took the Minnesota law as a model.
 

 The Legislature of Minnesota declared that an emergency existed in that state due to conditions almost, if not quite, identical with those found to exist by the Louisiana Legislature, and apparently the Constitution of Minnesota contains practically the same contract and due process clauses as our own. The validity of the Minnesota law was assailed for the same reason urged in this case. But the law was upheld by the Supreme Court of Minnesota and by the United States Supreme Court.
 

 Chief Justice Hughes, who wrote the majority opinion in the Blaisdell Case, said, in
 
 *292
 
 the course of his opinion, that, “while emergency does not create power, emergency may furnish the occasion for the exercise of power,” and used the following quotation from Wilson v. New, 243 U. S. 332, 37 S. Ct. 298, 61 L. Ed. 755, L. R. A. 1917E, 358, Ann. Cas. 1918A, 1024:
 

 “Although an emergency may not call into life a power which has never lived, nevertheless emergency may afford' a reason for the exertion of a living power already enjoyed.”
 

 The court reached the conclusion that an emergency existed in Minnesota which furnished a proper occasion “for the exercise of the reserved power of the state to protect the vital interests of the
 
 community.
 
 * * * The legislation was addressed to a legitimate end; that is, the legislation was not for the mere advantage of particular individuals but for the protection of a basic interest of society.”
 

 It was held, in view of these findings, and the further finding that the “conditions upon which the period of redemption is extended do not appear to be unreasonable,” that the Minnesota law as applied in the case before the court does not violate the contract clause or the due process clause of the Federal Constitution, nor does it deny to a mortgage creditor the equal protection of the laws.
 

 If such statutes do not violate the contract and due process clauses of the Federal Constitution, nor deny to those affected the equal protection of the laws, they do not violate similar provisions in state Constitutions.
 

 We do not think that the adoption of Act No. 159 of 1934 under the conditions which then existed and for the sole purpose therein stated was an unreasonable exercise of the state’s police power, and therefore hold that the act is not invalid on the grounds above urged by appellee.
 

 This leaves only two other grounds of attack for disposal, to wit, that the body of the act is broader than its title, and therefore violative of article 3, § 16, of the state Constitution, and section 4, art. 4, prohibiting the Legislature from passing any local or special law providing or changing the method of collecting debts.
 

 The last clause of section 5 of Act No. 159 provides that during the time it is in effect “no action shall be maintained in this State for a deficiency judgment where real estate has [been] sold at public sale for less than the amount due under the mortgage.”
 

 Counsel argue that this object is not expressed in the title. We express no opinion as to the constitutionality of that particular portion of the statute, for the reason that it is not involved in this controversy. But, if it be conceded that it is beyond the object of the act as expressed in the title, that affords no reason for declaring the entire act void, since we find that, if that particular provision be eliminated, those portions which remain and which come within the intendment of the title can stand separately as a complete legislative enactment.
 

 The rule is that whatever is contained in an act which is not germane to its purpose as expressed in the title may be rejected as extraneous matter superadded thereto. State v. Fobbs, 160 La. 237, 106 So. 840; State v. Thompson et al., 178 La. 806, 152 So. 530.
 

 As to the remaining point, it is argued that Act No. 159 of 1934 is a special law and
 
 *294
 
 falls within the constitutional prohibition expressed in section 4, art. 4, of the Constitution. The act does not fall within the classification of “special laws,” but is a “general law.” A “general law” is one that relates to a subject of a general nature or that affects all of the people of the state or all of a particular class. “It is not necessary that a law, to be ‘general,’ should apply to every person in the state, since a law is general if it is uniform in its operation on all persons within its scope.” A statute is general if its terms apply to, and its provisions operate upon, all persons and subject-matters in a like situation. See 3 Words and Phrases, Third Series, 892. See, also, 4 Words and Phrases, First Series, 3065, under the general heading “General Law.” See, also, Holmes v. Tennessee Coal Iron & Railroad Co., 49 La. Ann. 1465, 22 So. 403; Learned & Koontz v. Texas & Pacific Ry. Co., 128 La. 430, 54 So. 931; City of Shreveport v. Nejin, 140 La. 785, 73 So. 996; State v. Nejin, 140 La. 793, 74 So. 103; McKeon v. Sumner Building & Supply Association, 51 La. Ann. 1961, 26 So. 430; State v. McCue, 141 La. 417, 75 So. 100; Clark v. Opelousas, 147 La. 1, 84 So. 433.
 

 We therefore hold that the said act violates the above-cited provisions of neither the federal nor the state Constitutions, and is therefore valid legislation.
 

 On the Merits.
 

 The property involved is a large residence with something like eighteen rooms, on a large corner lot in what is known as the Garden District of the city of New Orleans. It cost the defendants, according to the testimony of Mr. Morris, approximately $80,000, which includes the original purchase price with repairs and improvements. The residence is in need of repairs, and probably could not be leased without them. It is not leased, but is occupied by the defendants. The trial judge found that a reasonable rental value of the property to defendants was $200 per month. Mr. Morris, while on the stand as a witness, was asked by his counsel, “Are you in position to pay a fair monthly rental between now and November 1 (the case was tried in August, 1934) and at that time put up such an amount in addition to take care of the city taxes of 1931 and the state taxes of 1933, which amount to approximately $1,000.00?” and he said, “Yes, I can do that; I think $200.00 a month, of course, would have no practical effect. It would be applied to taxes anyway.” The trial judge suggested during the progress of' the trial that he thought $200 a month was a reasonable rental value for the property. Neither the defendant nor his counsel took issue with him on that point. Mr. Morris said that, if it became necessary, he could raise money in addition to the monthly rental sufficient to take care of the taxes.
 

 We think the judgment on the merits is reasonable, fair, and equitable.
 

 For the reasons assigned, the judgment appealed from is affirmed.