**VIRGINIA JOINT STOCK LAND BANK v SHAFFER et**

Ohio Appeals, 2nd Dist, Darke Co

No 499. Decided Jan 16, 1936

Billingsley & Manix, Greenville, for plaintiff in error.

L. E. Kerlin, Greenville, and Paul Younker, Greenville, for defendants, Jak A Shaffer and Clara E. Shaffer.

## OPINION

BY THE COURT

The section of the statute under consideration, §11588 GC is as follows:

"Sec 11588 GC.  ENCUMBERED PROPERTY MUST BE SOLD; SALE POSTPONED, WHEN.—When a mortgage is foreclosed or a specific lien enforced, a sale of

the property shall be ordered. However, any court before which a proceeding for the foreclosure of a mortgage or the enforcement of a specific lien or execution against real property is had, on or before the first day of April, 1937, may after a full hearing, and upon such terms and conditions as may be fixed by the court, order that the sale be postponed and that proceedings to enforce the debt or to recover possession be restrained until such a time, not later than the first day of April, 1937, as the court may, in the exercise of its discretion believe to be just and equitable, considering the rights and equities of all parties affected by such order in the light of existing economic conditions but in no event to postpone said sale and/or such proceedings unless the current taxes and the interest due from and after the date of said postponement by said court order shall be paid as due, provided, no sale shall be postponed and no such proceedings had upon a mortgage executed after May 18, 1933.

"In the event of default as to any of the terms and conditions fixed by the court in postponing a sale under the provisions of this act, and upon application of the lienholder, his heirs, successors, or assigns, the court may set aside the said order of postponement and injunction and order the sale to proceed.

"When the real property to be sold is in one or more tracts, the court may order the officer who makes the sale to subdivide, appraise and sell them in parcels, or sell any one of the tracts as a whole."

If the action is unconstitutional because repugnant to either the State or Federal Constitution, then it will not be necessary to consider any of the other grounds of error.

We do not deem it necessary to consider and discuss at length the case of Land Bank v Radford, supra, in which the court held that:

"Frazier-Lemke Act providing for appraisal of property of farm debtors in bankruptcy, and for bankrupt's purchase of encumbered farm at appraised value with mortgagee's consent, or for bankrupt's retention of possession for five years with option to purchase at any time at appraised or reappraised value subject to payment of reasonable rental fixed by court, held void as depriving mortgagee of property rights without compensation."

Obviously, the question presented, considered and determined by the United States Supreme Court is not our question. The amendment to §11588 GC relates to the remedy given the mortgagee in the courts to foreclose his mortgage. It is recognized as emergency legislation; does not impair any substantial right under the mortgage contract nor deny the benefit of the remedy wherein the mortgage may be foreclosed, but permits the postponement of the effective date of the remedy under reasonable limitations prescribed in the statute.

Mr. Justice Brandies, in the opinion in the Radford case marks the distinction which may be made between the objectionable provisions of the Frazier-Lemke Act and other emergency legislation of the States intended to give temporary relief to mortgage debtors. At page 858 of the opinion:

"Courts of equity applying their established jurisdiction to relieve against penalties and forfeitures, created the equity of redemption. Thus the mortgagor was given a reasonable time to cure the default and to require a reconveyance of the property. Legislation in many of the states carried this development further, and preserved the mortgagor's right to possession, even after default, until the conclusion of foreclosure proceedings. But the statutory command that the mortgagor should not lose his property on default had always rested on the assumption that the mortgagee would be compensated for the default by a later payment, with interest, of the debt for which the security was given; and the protection afforded the mortgagor was, in effect a granting of a stay."

And at page 859:
"But practically always the measures adopted for the mortgagor's relief, including moratorium legislation enacted by the several states during the present depression, resulted primarily in a stay; and the relief afforded rested, as theretofore, upon the assumption that no substantive right of the mortgagee was being impaired, since payment in full of the debt with interest would fully compensate him."

The quoted parts of the opinion were consistent with the former holding of a majority of the court in Home Building & Loan Association v Blaisdell, 290 U. S., 398, 54 Sup. Ct. Rep., 231, 88 A.L.R., 1481.

This decision upheld a Mortgage Moratorium Act of the State of Minnesota as

consistent with the contract clause (Article 1, Par. 10) and the due process and equal protection clauses of the Fourteenth Amendment of the Federal Constitution. The Supreme Court of Minnesota had in a case under the same title as above, 249 NW, 334, supported the act as a justified exercise of the state's police power to meet the existence of an economic emergency.

Both the State and Federal Courts concede that the statute impairs the obligation of the mortgage contract but that it is a reasonable and valid exercise of the state's reserved power to protect the vital interests of the public during the emergency.

Chief Justice Hughes speaking for the majority of the court said (54 Sup. Ct. Rep. page 237):

"Chief Justice Marshall pointed out the distinction between obligation and remedy. Sturges v Crowninshield, 4 Wheat, p. 200, 4 L. ed. 550, "said he: 'The distinction between the obligation of a contract, and the remedy given by the legislature to enforce that obligation, has been taken at the bar, and exists in the nature of things. Without impairing the obligation of the contract, the remedy may certainly be modified as the wisdom of the nation shall direct.' And in VonHoffman v Quincy, 4 Wall, pp. 553, 554, 18 L. ed. 409, 410 the general statement above quoted was limited by the further observation that 'It is competent for the States to change the form of the remedy, or to modify it otherwise, as they may see fit, provided no substantial right secured by the contract is thereby impaired'."

See also annotation to Home Bldg. & Loan Ass'n v Blaisdell, supra, (88 A.L.R. 1519) where are collated the cases on "Governmental powers in peace time emergency."

The specific question has been considered and determined by Judge Snediker in a well written opinion which is reported in 31 N.P. (N.S.) 338. We are satisfied that the section is not offensive to either the State or the Federal Constitution.

The second, third and fourth grounds of error may be epitomized under the second ground, namely: The court did not follow the plain language of §11588 GC.

The motion by which the terms of 11588 GC were invoked was not filed by the mortgagor until after the property had been sold by the sheriff under the order of sale at a price almost $2000.00 more than the appraised value thereof and the report of the sale came on for confirmation.

It is the claim of the Land Bank that the section under consideration is only effective to postpone an order of sale and is not intended to afford any relief whatever to a mortgagor after sale had in the foreclosure proceedings. In our judgment this is the correct interpretation of the statute.

In fairness to the trial court it should be said that the proposition that the statute was not broad enough to permit the action of the court when invoked though suggested does not seem to have been urged and apparently was given no considerable consideration.

Counsel for the Shaffers cite Self v Leffler, 30 N.P. (N.S.) 211. This decision treats of the power of the court upon broad equitable principles to refuse to confirm a sale had on a foreclosure order. The court found that not only was the sale price grossly inadequate,—about one half the value of the property sold—but that the appraisement was irregular in that the appraisers did not fix the appraisement at the real value of the property in money as provided by the statute, §11672 GC.

The latest case in Ohio on the equitable power of the court to refuse to confirm a sale of mortgaged property bid off by the mortgagee at a sum in excess of two-thirds of the appraised value of the property but less than the amount of the judgment, unless and until the mortgagee allowed a further credit on his judgment claim is Buckeye Bldg. & Loan Co. v Sachs an unreported opinion by Judge Harris of the Cuyahoga County Common Pleas Court.

But the motion in the instant case is in terms grounded upon the Best Law, §11588 GC and it obviously was upon the authority of this statute that the relief was granted.

It is the claim of the Land Bank that the section under consideration is effective only to postpone the sale and is not intended to afford relief to a mortgagor after sale had.

Sec 11588 GC was amended to carry into effect what is known as the Best Moratorium Act, effective May 18, 1933, 115 O. L. 227, later amended of date Dec. 12. 1934. 115 O. L. Pt. 2, 327 and again 116 O. L. 10 effective February 4, 1935. The only purpose of the second and third amendments was to extend the date to which postponement of the sale under the act could be made.

Prior to the inclusion of the provisions of the Best Amendment, §11588 GC and formerly as R.S. §5316, had been carried in the Civil Procedure Code since 1853. The first two lines of the section which have not been changed were enacted to prevent the severity of strict foreclosure and therefore

provided that "when a mortgage is foreclosed * * * a sale of the property shall be ordered." (Emphasis ours). It is significant that this mandatory provision of the statute is retained. The new matter vesting the court from which the order of sale is to issue with discretionary authority upon terms set forth in the statute, empowers him to postpone the sale and that proceedings to enforce the debt or to recover possession be restrained until a time fixed, not later than April 1, 1937.

The power to enjoin "other proceedings to enforce the debt" are in connection with and in addition to the postponing of the sale.

What, then is meant by "any court * * * may * * * order that the sale be postponed."

In its widest application a judicial sale contemplates the order to sell from a court with authority, to an officer legally appointed and subject to confirmation by the court. Upon confirmation the sale is consummated as of the date when the property was offered and bid off. The term "sale" as used in the foreclosure statute is generally synonymous with its meaning as employed in the Chapter on Sales on Execution. As commonly understood it is the transaction wherein the officer carries out the order of sale, i.e., the order to offer the property to the public for sale. accept bids therefor and determine the highest bidder to whom, if his bid meets the legal requirements, the property is struck off.

The expression "confirmation of sale" by its very terms connotes that it follows the "sale". Its meaning is well understood in the profession and had the legislature meant to clothe the court with power to postpone or set aside the "confirmation of sale" it would have employed other and different terminology.

The language of §11688 GC relating to confirmation of sales on execution and the ordering of a deed to purchaser illustrates the sense in which the word "sale" is used in §11588 GC.

'Upon the return of any writ of execution for the satisfaction of which lands and tenements have been sold, on careful examination of the proceedings of the officer, if the court finds that the sale was made, in all respects in conformity to the provisions of this title, it shall direct the clerk to make an entry on the journal that the court is satisfied of the legality of such sale, and that the officer make to the purchaser a deed for the lands and tenements."

The gist of the amendment to §11588 GC is a postponement of the sale. It would seem useless and unnecessary procedure to require all steps to be taken in compliance with an order of sale, advertising of the property, offering at public auction, with the incidental expense and thereafter prior to confirmation extend the relief to the mortgagor provided in the statute. Some consideration also must be given those who are interested as bidders on the property and particularly the bidder to whom the property is knocked off at the public sale. The purchaser who has bid upon the real estate in compliance with the order of sale and in conformity to its terms and who stands ready, able and willing to pay the price has rights to which the courts give consideration. 24 O. Jur., 59.

The letter of the section, in our judgment, defines a purpose to permit a postponement of the sale as we have defined it and such interpretation is in conformity to its spirit.

In the cases which have come to our attention it has been the practice in foreclosure suits wherein the benefit of the Best Act has been invoked, for the mortgagor to file an answer wherein he sets forth facts which, if true, entitle him to the benefits of the act. In all instances this has been done prior to the order of sale.

The amended Frazier-Lemke Bill undertakes ex vi termini to reinstate all actions instituted under the former Frazier-Lemke Act. The effect of this provision, of course, is not before us and should in any event be determined by the Federal Courts.

We find no abuse of discretion by the trial court in the judgment under review.

The judgment will be reversed and cause remanded for further proceedings in accord with this decision.

BARNES, PJ, HORNBECK and BODEY, JJ, concur.