## CITY OF GUTHRIE v. PIKE & LONG.

No. 34871. April 15, 1952.

*243 P. 2d 697.*

Merle G. Smith, City Atty., and A. V. Dinwiddie, Guthrie, for plaintiff in error.

A. G. C. Bierer, Jr., Charles A. Moser, and Bierer & Bierer, Guthrie, for defendant in error.

BINGAMAN, J. This action was brought by Pike & Long, a copartner-

ship composed of C. C. Pike and Gordon R. Long, against the city of Guthrie, a municipal corporation, to enjoin the enforcement of an ordinance adopted by the city of Guthrie, under its police power, to regulate the business of plaintiffs. In their petition plaintiffs alleged that they had, for years past, operated a general merchandise store in the city of Guthrie, in which they sold merchandise acquired by them at sales of bankrupt stocks, stocks of merchandise injured by fire, smoke or water, which had been taken over by insurance companies, and other stocks which had been damaged in some manner or for some reason were sold in bulk at receiver's sales or other such sales and that on November 1, 1949, the city council of the city of Guthrie passed an ordinance purporting to regulate the business of plaintiffs, but which ordinance did in effect prohibit the further conducting of their business, and which ordinance violated numerous constitutional rights set up in the petition. Defendant in its answer denied that the ordinance was invalid or unconstitutional and asserted that it would be enforced against all persons to whom it applied, and that if plaintiffs violated the ordinance it would be enforced against them. The trial court, at the conclusion of the trial, rendered judgment for plaintiffs, enjoining the city from enforcing the ordinance against plaintiffs, and the city appeals.

From the record it appears that for a number of years plaintiffs have maintained in the city of Guthrie a general merchandise store, consisting of a ground floor store room and basement, 50 feet wide by 135 feet long, and that this store was supplied with merchandise by the purchase by plaintiffs of damaged merchandise of almost every description, purchased at bankrupt sales, underwriter's sales and other similar sales where stocks of goods were disposed of to the highest bidder; that this stock was purchased at such prices that they could sell it at one-half the marked price and realize a profit,

and that frequently when they purchased stocks of merchandise in this manner they advertised the same in the newspaper and offered it to the public at one-half the marked price. Many of the advertisements introduced in evidence stated that the merchandise advertised was damaged by fire, smoke or water, and in all the advertisements, under the name of plaintiffs, appeared a statement that they were dealers in fire damaged and distressed stocks, or dealers in slightly fire damaged and distressed stocks. A large sign in front of their store stated that they were dealers in damaged and distressed merchandise and they testified that numerous such signs were placed in the store in plain view of their customers. While most of these sales commenced upon a day certain, they were not for any stated length of time, and during the sale all other articles in the store, which were likewise marked one-half the usual price, were offered for sale to the general public. No attempt was made by plaintiffs to segregate every separate parcel of goods so purchased by them from all other parcels of goods, but goods of a certain class were commingled with those already in stock, if plaintiffs had on hand goods of a similer nature. Between sales plaintiffs kept their store open and conducted it much in the manner of an ordinary general merchandising store, except that all goods therein were marked at one-half of the usual price.

The city ordinance was introduced in evidence. It purported to regulate the sale of distress goods, wares and merchandise or merchandise damaged by fire, smoke, water or otherwise, specifically stating that said ordinance was enacted under the police power of the city. It required any person advertising for sale any such goods to first obtain a license to conduct such sale from the city clerk, defined distressed goods, wares and merchandise as all goods, wares and merchandise advertised as an insurance, bankruptcy, mortgage, insolvent assignees, executors, administrators, creditors, re-

ceivers or trustees sale of goods, or a sale of goods advertised as damaged by fire, smoke or water or advertised as obtained by, through or as the result of any of the above-named situations or categories. It provided for a police regulation and inspection fee of $25 for each sale, plus one dollar for each one thousand or fraction thereof of the submitted inventory at the price for which the goods were offered for sale, and provided that each license should expire at the end of 60 days, unless extended by the payment of $2 per day until such time as the stock offered for sale should be sold. It required the applicant to file an inventory containing a complete list of all the goods, wares and merchandise to be sold in the sale, in which inventory each and every article to be offered for sale should be described with reasonable accuracy. It prohibited the commingling of the goods for which the license to sell was procured with any other goods, but required it to be segregated and marked so that it would be separate and apart from the other goods handled by plaintiffs. It provided that food offered for sale should be inspected by the State Health Department and not sold unless a certificate as to the purity and safety of the article to be offered was procured and presented at the time the license was secured. It further provided that no person obtaining a license should add any goods to the inventoried stock and no goods should be sold at any sale advertised except those included in the original inventory; that a new inventory should be filed when a license was extended; that every sale of goods not so inventoried should constitute a separate offense; that violation of the provisions of the ordinance should be punished by a fine of $19 and every violation should constitute a separate and distinct offense. It appears to be conceded that plaintiffs were the only persons operating a business of this nature in the city of Guthrie, so that the ordinance was specifically directed against their business, although it purported to apply to all businesses of this nature.

As we view the purpose and effect of the ordinance it would be to place each sale advertised by plaintiffs, in which they announced to the public the purchase of an additional stock of goods, in the same class or category as the various sales at which plaintiffs acquired their stocks, except that the stocks would not be offered to the public in bulk. The stock so advertised would be the only goods which could be sold by plaintiffs during the period covered by their license, or by an extension thereof. If they desired to avoid this result it would be necessary for them to inventory their entire stock of goods and advertise the same. At the expiration of the 60-day period it would be necessary for them to again submit an inventory of the goods remaining unsold, and if, in the meantime, they had purchased a new stock of goods, they could not put the same with the stock advertised and offer it for sale, but would be compelled to hold it separate and apart and not offer it for sale until the entire stock of merchandise, for the sale of which the license had issued, had been disposed of, unless they obtained another license for the sale of the lot last purchased.

On the other hand, if they desired to call attention only to a newly purchased stock which they were offering for sale, and advertised only the newly purchased goods for sale, they could not, during the license period or any extension thereof, offer for sale any of the other goods in their stock, unless they filed other inventories and obtained other licenses, but would be required to hold them off the market until the entire stock advertised had been disposed of. Each stock purchased and advertised, or the residue remaining after the expiration of the license, would be required to be kept separate and apart from all other goods in the store so long as any remained, and during all this time plaintiffs would be

required to pay a $2 per day license fee on the goods of each particular lot remaining unsold, if they continued to offer them for sale. Plaintiffs testified that the effect of the ordinance would be to force them to close their store, in that it would be absolutely impossible for them to comply with the provisions of the ordinance, especially with reference to segregation of the various lots, and further that the expense to which they would be put would be such that they could only conduct the business at a loss. There was no evidence to the contrary.

The defendant asserts that the power to enact the ordinance is granted by 11 O. S. 1951 §642, which empowers a city to enact ordinances deemed expedient for the good government of the city, the preservation of peace and good order, the suppression of vice and immorality, the benefit of trade and commerce, and the health of the inhabitants thereof. It argues that without the ordinance, and especially that portion of the ordinance prohibiting the commingling of the various stocks of goods purchased by the plaintiffs, fraud could be perpetrated upon the inhabitants in that they would be or could be induced to buy articles much more severely damaged than represented by plaintiffs, or which had been in the store for a long time, under the impression and belief that they were purchasing goods recently acquired by plaintiffs as advertised. They further argue that the requirement that plaintiffs inventory their stock, would be beneficial to the taxing power in that it would enable the collector of taxes to ascertain definitely the amount of stock carried by plaintiffs and the value thereof.

No defrauded customer was produced as a witness, nor was there any complaint by the taxing authorities, but the only persons who testified on behalf of the ordinance were competing retail merchants in the city of Guthrie, who testified that the business conducted by plaintiffs was detrimental to their business. There merchants admitted that they commingled their stocks, and that although they knew from certain markings what goods they had acquired at a later date than others, the customer did not, and from their testimony it appears that if they had advertised to the public the recent acquisition of a certain portion of their stock, they would willingly sell the customer, brought into the store by reason of such advertising, an article not so acquired, but which had been previously placed in their stock. There was no testimony tending to prove that the advertising by plaintiffs was false and misleading, or that the public were deceived thereby, or that an inspection by the police or inspectors appointed by the city would disclose defects in the merchandise so offered for sale by the plaintiffs which could not be discovered by prospective purchasers. Nor was there any evidence offered tending to prove that the expenses of issuing the license and inspecting the plaintiffs' store bore any relation to the inspection fees to be charged and collected by the city. And, while the city lays much stress on the fact that the retail merchants who are plaintiffs' competitors kept inventories of their stocks, it advances no reason for requiring additional inventories by plaintiffs at the expiration of each 60-day license period.

It is an almost universal rule that the standard by which the validity of all exercise of the police power is tested is that it extends only to such measures as are reasonable, and that all such regulations must be reasonable under all the circumstances. 11 Am. Jur. p. 1073, §302; 16 C. J. S. p. 567, §198.

In Walcher v. First Presbyterian Church, 76 Okla. 9, 184 P. 106, 6 A. L. R. 1593, we said:

"An ordinance of a regulatory nature in contravention of the natural rights of individuals must be reasonable; that is, the court must be able to see that it will tend to promote the public health, morals, safety, or welfare. 19 R. C. L. 112."

In New State Ice Co. v. Liebmann, 285 U. S. 262, 76 L. Ed. 747, the Supreme Court of the United States said:

"Plainly, a regulation which has the effect of denying or unreasonably curtailing the common right to engage in a lawful private business, such as that under review, cannot be upheld consistent with the 14th Amendment. Under that amendment, nothing is more clearly settled than that it is beyond the power of a state, 'under the guise of protecting the public, arbitrarily (to) interfere with private business or prohibit lawful occupations or impose unreasonable and unnecessary restrictions upon them.' Jay Burns Baking Co. v. Bryan, 264 U. S. 504, 513, 68 L. Ed. 813, 826, 32 A. L. R. 661, 44 S. Ct. 412, and authorities cited; Louis K. Liggett Co. v. Baldridge, 278 U. S. 105, 113, 73 L. Ed. 204, 208, 49 S. Ct. 57."

In 11 Am. Jur. p. 1087, §306, it is said:

"In accordance with the general rule that where the validity of legislation is properly raised, it is the duty of the judiciary to determine its constitutionality, when police statutes are challenged as an invasion of rights and liberties guaranteed by the fundamental law, it becomes the duty of the courts to determine whether the exercise of power is really necessary for the public good. It has been frequently stated, in cases where the questions are presented for judicial review, that in order to sustain legislation under the police power, the courts must be able to see that its operation tends in some degree to prevent some offense or evil or to preserve public health, morals, safety, and welfare, and that if a statute discloses no such purpose, has no real or substantial relation to these objects, or is a palpable invasion of rights secured by the fundamental law, it is the duty of the courts so to adjudge and thereby give effect to the Constitution."

In the instant case there is no showing in the record nor do the facts brought out in the testimony of the parties tend to indicate that the public welfare is to any extent whatever injuriously affected by the business conducted by plaintiffs, or that the public interest will be subserved by the enforcement of the questioned ordinance. From the record as above pointed out, the only persons complaining are the competitors of plaintiffs. Defendant argues that the welfare and well doing of these retail merchants is the public welfare, since their continued existence is necessary to the city, but there is no evidence which in the slightest degree tends to prove that the continued operation of the business of plaintiffs will force these other merchants out of business. In fact, the two men who testified for defendant admitted that the retail merchants petitioned the city to enact such ordinance, and further admitted that the Chamber of Commerce report for the year 1949 stated that the business of retail merchants in Guthrie was better than it had been for years.

In Grantham v. City of Chickasha, 156 Okla. 56, 9 P. 2d 747, we held void an ordinance of the city of Chickasha, which, under the construction given it by the city, placed a greater burden upon bakers, with plants outside the city, than it placed upon those having their bakeries within the city, holding that such discrimination was enforced by the city for the purpose of giving resident bakers an advantage over nonresident bakers. See, also, Buckler v. City of Geary, 174 Okla. 533, 51 P. 2d 271.

In the instant case, so far as the record shows, plaintiffs are engaged in the operation of a lawful business, which they are conducting in a lawful and proper manner and in such way that the public instead of being harmed is benefited thereby. In fact, a petition, signed by some 1,600 residents of the city of Guthrie alone, and by numerous other residents of surrounding towns, requesting the city council not to enact such ordinance, as well as letters to the same effect from numerous out-of-town clients, were placed in the record by plaintiffs. We think the record conclusively establishes that the ordinance was passed solely for the purpose of forcing plaintiffs to close their place

of business, by placing upon them restrictions with which they could not possibly comply, and by saddling them with large and unnecessary license payments, and that all this was done solely for the benefit of their competitors. The trial court properly held that the ordinance was violative of the constitutional rights of plaintiffs, and was arbitrary and discriminatory, and the issuing of the injunction against its enforcement is fully sustained by the evidence.

Affirmed.

HALLEY, V. C. J., and WELCH, CORN, GIBSON, JOHNSON, and O'NEAL, JJ., concur. DAVISON, J., concurs in conclusion.