The **FEDERAL LAND BANK OF WICHITA**, Wichita, Kansas, A Corporation, Appellee,

v.

Jim **STORY**, et al., Appellants,

and

State of Oklahoma ex rel. Robert Henry, Attorney General of the State of Oklahoma, Intervenor–Appellant.

No. 68077.

Supreme Court of Oklahoma.

May 3, 1988.

Crowe & Dunlevy by Clyde A. Muchmore, Harvey D. Ellis, Jr., Oklahoma City, for appellee.

R. Theodor Stricker, Gentry, Ark., for appellant Landowners.

Robert H. Henry, Atty. Gen. by Kathlyn A. Rhodes, Asst. Atty. Gen., Oklahoma City, for intervenor-appellant.

DOOLIN, Chief Justice.

The question presented on appeal is whether the trial court erred by finding unconstitutional the Oklahoma Mortgage Foreclosure Moratorium Act, 62 O.S.Supp. 1986, §§ 492, 493. We find the Act unconstitutional on its face as a violation of the Contracts Clause of the United States and Oklahoma Constitutions, and as a violation of Article II, § 6, of the Oklahoma Constitution.

In 1986, in response to a limited economic emergency in the State of Oklahoma, the legislature passed the Oklahoma Mortgage Foreclosure Moratorium Act, 62 O.S.Supp. 1986, §§ 492, 493, which provides:

### FARM CREDIT SYSTEM [NEW]

§ 492. Definitions

As used in this act:

1. "Farm Credit System" means the Farm Credit System as defined in the Farm Credit Act of 1971, P.L. 92–181, as amended;

2. "Federal Land Bank" means a federal land bank within the Farm Credit System pursuant to the provisions of the Farm Credit Act of 1971, P.L. 92–181, as amended;

3. "Federal Land Bank Association" means a federal land bank association which is within the Farm Credit System pursuant to the provisions of the Farm Credit Act of 1971, P.L. 92–181, as amended; and

4. "Capital Corporation" means the Federal Credit System Capital Corporation as defined in the Farm Credit Amendments Act of 1985, P.L. 99–205.

§ 493. One year deferment on certain foreclosure actions

There is hereby declared a period of deferment of not longer than one (1) year from the date of the enactment of this act, during which time the Federal Land Bank of Wichita and any Federal Land Bank Association are prohibited from initiating a foreclosure action in the courts of this state. However, nothing in this act shall prohibit the Capital Corporation from initiating a foreclosure action from and after this date so long as the Capital Corporation has determined that the loan or loans held by the borrower or borrowers are ineligible for restructuring assistance.

Added by Laws 1986, c. 188, § 2, emerg. eff. May 21, 1986.

The Act remained in effect from May 21, 1986, until May 21, 1987. On August 7, 1986, the Federal Land Bank of Wichita filed a mortgage foreclosure action in the District Court of Craig County, Oklahoma, against Jim and Margie Story [landowners]. The landowners sought shelter from the foreclosure by invoking protection of the Act and filed a motion to dismiss. On October 23, 1986, the trial court found the Act unconstitutional. On November 6, 1986, the State intervened as provided by 12 O.S.Supp.1984, § 2024(D) and was given until November 17, 1986, to respond. The State's brief was timely filed. Without allowing the State to present evidence and argument in support of the constitutionality of the Act, the trial court, on November 17, 1986, affirmed its earlier ruling. Further proceedings were stayed pending interlocutory appeal by the landowners. The State filed a petition for a Writ of Certiorari.

■ Before the parties could fully brief the question of the Act's constitutionality for our review, the Act expired by its own terms. Review of the constitutionality of the Act is now moot. The State urges that mootness should not act as a bar to review because of the great public interest in the question. We agree to review the constitutionality of the Act for two reasons. First, the economic conditions which prompted passage of the Act still exist in Oklahoma. The legislature may at any time revive the Act to protect landowners from foreclosure by the Federal Land Bank. The renewed Act may again expire before the question of its constitutionality can reach this Court for review. Mootness will not act as a bar when the challenged event is "capable of repetition yet evading review."[1] We find

1. *Roe v. Wade,* 410 U.S. 113, 125, 93 S.Ct. 705, 713, 35 L.Ed.2d 147 (1973). *See also, Marquette*

such a condition here. Second, ten appeals have been consolidated for review.[2] In each case, the trial judge found the Act unconstitutional and stayed further proceedings pending interlocutory review. We have an obligation to rule on the constitutionality of the Act so that these trials may resume and proceed in an orderly fashion based upon our decision today. We therefore grant certiorari, finding that special and important reasons exist for such grant.[3]

■ As a preliminary matter, the State argues that the trial court erred in refusing to allow the State to present evidence and argument in support of the constitutionality of the Act. We agree. Title 12 O.S. Supp.1984, § 2024(D),[4] imposes an affirmative duty on the trial court to permit the State to intervene and present evidence and argument on the question of the constitutionality of a statute. We find the error harmless, however, because the Act is unconstitutional on its face. No amount of argument or evidence could be presented by the State which would erase the plain wording of the statute.

Article I, § 10, cl. 1, of the United States Constitution restricts the authority of a State from passing "any Bill of Attainder, ex post facto Law, or Law impairing the Obligation of Contracts...." Article II, § 15, of the Oklahoma Constitution provides "No bill of attainder, ex post facto

law, nor any law impairing the obligation of contracts, shall ever be passed."

■ In reviewing any question concerning impairment of contracts prohibited by Federal and State Constitutions, certain threshold questions must be addressed. First, is the impairment the result of State action? The Contracts Clause acts as a restriction on State power, but does not apply as a restriction on the exercise of Federal power.[5] Nor, by definition, does the Contracts Clause apply to the impairment of contracts by individuals or corporations. State remedies are available for private impairment of contracts. Here, the Act was passed by the legislative branch of State government and state action is indeed present. Second, are existing contracts impaired or are prospective contracts impaired? The Contracts Clause does not inhibit prospective impairment of contracts, such as is done for instance in the Statute of Frauds. Only impairment of existing contracts is prohibited.[6] In the instant case, the Act prohibits foreclosure on mortgages existing prior to the Act. Thus, the Act impairs existing contracts.

The original intent of the Contracts Clause was to prevent the States from passing debtor relief laws, but the Contracts Clause has since been used in other contexts.[7] We, therefore, next determine whether the impairment is of public contracts or private contracts.

---

*v. Marquette,* 686 P.2d 990, 992 (Okl.Ct.App. 1984).

**2.** Appeal No.'s 68,077; 68,683; 68,684; 68,872; 68,874; 68,902; 68,903; 68,917; 69,035; and 69,036.

**3.** Rules of the Court of Appeals, Rule 3.13A.

**4.** D. INTERVENTION BY STATE OF OKLAHOMA. In any action, suit, or proceeding to which the State of Oklahoma or any agency, officer, or employee thereof is not a party, wherein the constitutionality of any statute of Oklahoma affecting the public interest is drawn in question, the court shall certify such fact to the Attorney General of Oklahoma and shall permit the State of Oklahoma to intervene for presentation of evidence, if evidence is otherwise admissible in the case, and for argument on the question of constitutionality. The State

of Oklahoma shall, subject to the applicable provisions of law, have all the rights of a party and be subject to all liabilities of a party as to court costs to the extent necessary for a proper presentation of the facts and law relating to the question of constitutionality.

**5.** *Pension Benefit Guaranty Corp. v. R.A. Gray & Co.,* 467 U.S. 717, 732 n. 9, 732–733, 104 S.Ct. 2709, 2719 n. 9, 2719–20, 81 L.Ed.2d 601 (1984). *See also:* 11 USCA § 1 et seq. Bankruptcy, and Frazier–Lemke Act of Aug. 28, 1935, 11 USCA § 203.

**6.** *Ogden v. Saunders,* 25 U.S. (12 Wheat.) 213, 6 L.Ed. 606 (1827).

**7.** *Home Building & Loan Ass'n v. Blaisdell,* 290 U.S. 398, 427–28, 54 S.Ct. 231, 235–36, 78 L.Ed. 413 (1934).

If the State is a party to the contract and the State impairs its own contractual obligation, we determine whether the State has impermissibly bargained away one of its police powers. If not, we then look to the degree of impairment and to the necessity and reasonableness of the repealing legislation and whether it promotes an overriding police power interest.[8]

If the impaired contract is private in nature, we first determine if the State law effects a substantial impairment of the contractual relationship. If so, the State must then identify a significant and legitimate public interest to justify the impairment. The third step of the inquiry is "whether the adjustment of the rights and responsibilities of contracting parties is based upon reasonable conditions and is of a character appropriate to the public purpose justifying the legislature's adoption."[9] In the cases at bar, the State is not a party to these contracts. The cases before us are private contracts secured by a mortgage. The actions are foreclosures filed by the mortgagee against the mortgagor. We find the Act prohibiting mortgage foreclosure actions by the Federal Land Bank to be a debtor relief law.

■ The Act under review is a mortgage foreclosure moratorium. Our review is simplified by *stare decisis*, for we previously addressed this identical issue in *State ex rel. Roth v. Waterfield*, 167 Okl. 209, 29 P.2d 24 (1933).

In 1933, responding to a national economic emergency (the Great Depression) the Oklahoma legislature passed the Oklahoma Mortgage Moratorium Act.[10] Section 1 of the Act extended the time to answer and postponed trial and judgment when answer had been filed in any pending action on the effective date of the Act for nine months in any mortgage foreclosure action. For all actions filed after the effective date of the Act, Sections 2 and 3 of the Act vested district courts with judicial discretion to grant continuances during a period of two years on a case-by-case basis where it was necessary to accomplish the purposes of the Act; required the owner to pay accruing interest and all taxes on the property; required the mortgagor to pay a reasonable rental value to the mortgagee for the period of continuance, such reasonable rental to be determined by the court; and empowered the court to "make such other requirements as will reasonably compensate and adequately protect the mortgagee during the period of delay."[11]

In *Waterfield* we found Section 1 of the Act to be unconstitutional as an impairment of contract prohibited by the Contracts Clauses of the Federal and State Constitutions. We further found Section 1 to be a violation of Article II, § 6, of the Oklahoma Constitution. Sections 2 and 3 of the Act, however, were found to be a constitutional exercise of the police power. Using the severability clause found in Section 8 of the Act, we struck Section 1 from the Act and allowed the remaining Sections to stand.

Subsequent to our decision in *Waterfield*, the United States Supreme Court issued its opinion in *Home Building & Loan Association v. Blaisdell*, 290 U.S. 398, 54 S.Ct. 231, 78 L.Ed. 413 (1934), in which the Supreme Court sustained the Minnesota Mortgage Moratorium Act. On petition for rehearing,[12] we compared the 1933 Oklahoma Act to the Minnesota Act and applied the principles enunciated in *Blaisdell*. We again found that Sections 2 and 3 of the Oklahoma Act passed constitutional muster "as being within the reserved power of the state, and a reasonable exercise of that power devoted to a legitimate end in view of the existing emergency need."[13] We upheld our earlier decision that Section 1 of

---

8. *United States Trust Company of New York v. New Jersey*, 431 U.S. 1, 97 S.Ct. 1505, 52 L.Ed.2d 92 (1977).

9. *Energy Reserves Group, Inc. v. Kansas Power & Light Co.*, 459 U.S. 400, 411–12, 103 S.Ct. 697, 704–05, 74 L.Ed.2d 569 (1983).

10. The text of the 1933 Act may be found at 29 P.2d at 25–26.

11. *Id.* at 32.

12. 29 P.2d at 33.

13. *Id.* at 38.

the Act constituted a constitutionally prohibited impairment of contract, because "[t]he three subdivisions of section 1 each grant an arbitrary and capricious extension of time amounting to a taking of private property without any provision whatever for compensation to or protection of the rights of the mortgagee." [14] Finding no conflict between *Waterfield* and *Blaisdell*, we refused to grant the petition for rehearing.

The 1986 Mortgage Moratorium Act closely parallels Section 1 of the 1933 Act, by absolutely prohibiting the Federal Land Bank from initiating a foreclosure action in any Oklahoma court during the life of the Act. Title 62 O.S.Supp. 1986, §§ 492, 493, do not provide for judicial determination of whether the circumstances justify application of the moratorium, nor do these sections grant discretion to the trial court in determining the length of the continuance. The Act fails to provide for the protection of the mortgagee by requiring the payment of taxes, interest, or fair market rental by the mortgagor during the continuance. The Act further fails to grant the trial court the power to prevent waste or otherwise protect the mortgagee during the period of delay. *Stare decisis* dictates that 62 O.S.Supp.1986, §§ 492, 493, are unconstitutional on their face as a violation of the Contracts Clause under Federal and State Constitutions. The Act is a further violation of Article II, § 6, of the Oklahoma Constitution for failure to provide a speedy and certain remedy for every wrong and injury without delay.[15]

The State argues that Section 493 provides for an alternate remedy which justifies a finding that the Act is not an impairment of contract. The State relies on *Richmond Mortgage & Loan Corp. v. Wachovia Bank & Trust Co.*, 300 U.S. 124, 57 S.Ct. 338, 81 L.Ed. 552 (1937), in which the Supreme Court found:

The Legislature may modify, limit, or alter the remedy for enforcement of a contract without impairing its obligation, but in so doing, it may not deny all remedy or so circumscribe the existing remedy with conditions and restrictions as seriously to impair the value of the right. The particular remedy existing at the date of the contract may be altogether abrogated if another equally effective for the enforcement of the obligation remains or is substituted for the one taken away.[16]

Section 493 prohibits any Federal Land Bank from initiating a mortgage foreclosure action in state court during the life of the Act. The Capital Corporation may, however, bring a foreclosure action "so long as the Capital Corporation has determined that the loan or loans held by the borrower or borrowers are ineligible for restructuring assistance." The State argues that the mortgagee is provided an alternate remedy because they may sell the mortgage to the Capital Corporation, which, in turn, has access to the state courts to file a foreclosure action.

In the instant cases, the Federal Land Bank elected to file foreclosure actions in state court and did not exercise the alternative remedy by assigning these mortgages to the Capital Corporation. Whether the Capital Corporation has the authority under 12 U.S.C. §§ 2001–2276, (Supp.1986) to bring a foreclosure action in state court on mortgages assigned to it by a Federal Land Bank is not a question before us, because the Capital Corporation is not a party to these actions. Therefore, what the Capital Corporation could, or would, do is purely speculative and will not be considered.

In *Blaisdell*, the Supreme Court found the contracts clause would *not* be construed to "permit the state to adopt as its policy the repudiation of debts or the destruction of contracts or the denial of means to enforce them." [17] "That," the Court held, "would impair the contract instead of merely delaying enforcement while compensating the creditor for the

---

14. *Id.*

15. *See also Moses v. Hoebel,* 646 P.2d 601 (Okla. 1982).

16. 300 U.S. at 128–29, 57 S.Ct. at 339.

17. 290 U.S. at 439, 54 S.Ct. at 240.

delay." [18] In the instant case, the so-called alternative remedy requires the mortgagee to divest itself of all contractual rights by assigning the mortgage to a third party [the Capital Corporation] who may, in its own right, bring a mortgage foreclosure action. State action which forces such a divestment to gain access to state court destroys the mortgagee's contractual rights. The statute denies all remedy to the mortgagee during the life of the Act. The alternative remedy is neither equally effective for the enforcement of the obligation nor does it substitute for the remedy taken away.

Finally, the State argues that the extent of the farm economic emergency justifies the legislature's action. The current emergency pales in comparison to that which existed during the Great Depression. In any event, the quantum of emergency is not the test; rather, the test is whether the state's action is a reasonable exercise of the police power devoted to a legitimate end in view of the emergency.

> Emergency does not create power. Emergency does not increase granted power or remove or diminish the restrictions imposed upon power granted or reserved. The Constitution was adopted in a period of grave emergency. Its grants of power to the federal government and its limitations of the power of the States were determined in the light of emergency, and they are not altered by emergency.[19]

We find that Section 493 operates as "an arbitrary and capricious extension of time amounting to a taking of private property without ... compensation ... or protection of the rights of the mortgagee." Therefore, Section 493 is not a reasonable exercise of the police power devoted to a legitimate end in view of the emergency.

Lest the reader think our decision too harsh, one thought must firmly be kept in mind: "We must never forget, that it is *a constitution* we are expounding.... a constitution intended to endure for ages to come, and, consequently, to be adapted to the various *crises* of human affairs." [20] Nothing we say today prevents the State from redrafting the Mortgage Foreclosure Moratorium Act, provided the new act is a reasonable exercise of the police power in conformity with the principles announced herein.

The decision of the trial court should be, and hereby is, AFFIRMED. The cases are remanded for further proceedings not inconsistent with this opinion.

HARGRAVE, V.C.J., and SIMMS, OPALA and ALMA WILSON, JJ., concur.

HODGES, LAVENDER and SUMMERS, JJ., dissent.

KAUGER, J., disqualified.

HODGES, Justice, dissenting.

I respectfully dissent from the majority's pronouncement that *stare decisis* dictates that 62 O.S.Supp.1986 §§ 492, 493 (the Act)[1] is unconstitutional as violative of the

---

**18.** *City of El Paso v. Simmons,* 379 U.S. 497, 526, 85 S.Ct. 577, 593, 13 L.Ed.2d 446 (1965) (Black, J., dissenting); *See also United States Trust Co. of New York v. New Jersey, supra,* note 8, 431 U.S. 1, at 19, n. 17, 97 S.Ct. 1505, at 1516, n. 17.

**19.** *Waterfield* at 29 P.2d 36, quoting *Blaisdell* 290 U.S. at 425, 54 S.Ct. at 235.

**20.** *Blaisdell* at 443, 54 S.Ct. 242, quoting Chief Justice Marshall in *McCulloch v. Maryland,* 17 U.S. (4 Wheat.) 316, 407, 415, 4 L.Ed. 579 (1819) (citations omitted) (emphasis in the original).

**1.** The terms of 62 O.S.Supp.1986 §§ 492, 493 provided:
§ 492. Definitions
"As used in this act:

"1. 'Farm Credit System' means the Farm Credit System as defined in the Farm Credit Act of 1971, P.L. 92–181, as amended;
"2. 'Federal Land Bank' means a federal land bank within the Farm Credit System pursuant to the provisions of the Farm Credit Act of 1971, P.L. 92–181, as amended;
"3. 'Federal Land Bank Association' means a federal land bank association which is within the Farm Credit System pursuant to the provisions of the Farm Credit Act of 1971, P.L. 92–181, as amended; and
"4. 'Capital Corporation' means the Federal Credit System Capital Corporation as defined in the Farm Credit Amendments Act of 1985, P.L. 99–205."
§ 493. One year deferment on certain foreclosure actions

contract clauses of the United States and Oklahoma Constitutions,[2] and further violative of Article II, § 6 of the Oklahoma Constitution.[3]

I do not believe the Act so closely parallels Section 1 of the Oklahoma Mortgage Moratorium Act found unconstitutional by this Court in *State ex rel. Roth v. Waterfield,* 167 Okl. 209, 29 P.2d 24 (1933).[4] In *Waterfield,* while recognizing the existence of the national emergency of economic depression warranted a temporary interference with contract rights, the Court found Section 1 was not an appropriate exercise of the police power of the State. In so holding this Court reasoned that the provision did not provide for the protection of the rights of the mortgagee during the period of delay, and it applied to all actions to foreclose a real estate mortgage without regard to whether the delay is necessary or equitable in a particular case. This Court in its supplemental opinion on rehearing distinguished Section 1 of the Oklahoma Act from the provisions of the Minnesota Mortgage Moratorium Law which had been recently upheld on constitutional grounds by the United States Supreme Court in *Home Building & Loan Asso. v. Blaisdell,* 290 U.S. 398, 54 S.Ct. 231, 78 L.Ed. 413 (1934). *Blaisdell* is the leading case concerning the constitutional restrictions of the contract clause upon mortgage moratory legislation referable to economic depression.

As correctly noted in the majority opinion today, the appropriate standard in cases involving a contract clause challenge is to first determine whether the legislation has substantially impaired contractual rights. If substantial impairment is found, the legislation must have a significant and legitimate public purpose, such as remedying a broad and general social or economic problem. Lastly, the means selected must be based upon reasonable conditions and is of a character appropriate to the public purpose justifying the legislature's adoption.[5]

Undoubtedly the subject of the Act in question is within the scope of the police

---

"There is hereby declared a period of deferment of not longer than one (1) year from the date of the enactment of this act, during which time the Federal Land Bank of Wichita and any Federal Land Bank Association are prohibited from initiating a foreclosure action in the courts of this state. However, nothing in this act shall prohibit the Capital Corporation from initiating a foreclosure action from and after this date so long as the Capital Corporation has determined that the loan or loans held by the borrower or borrowers are ineligible for restructuring assistance."

**2.** U.S. Const. art. I, § 10, cl. 1 and Okla. Const. art. II, § 15.

**3.** Okla. Const. art. II, § 6 provides:
"The courts of justice of the State shall be open to every person, and speedy and certain remedy afforded for every wrong and for every injury to person, property, or reputation; and right and justice shall be administered without sale, denial, delay, or prejudice."

**4.** Section 1 of Chapter 16 of the 1933 Okla.Sess. Laws provided for a fixed extension of delay of nine months to answer in actions to foreclose mortgages and read as follows:
"In all actions now pending in the courts of this State, for the foreclosure of mortgages or other liens upon real estate, where the answer of the defendant or defendants has not been filed, such defendant or defendants shall not be held to answer therein until the expiration of nine (9) months after the date of the service of summons upon the defendant who is the record owner of the real estate, at the time of the filing of suit upon which the mortgage or other lien is sought to be foreclosed, and
"In all actions hereafter filed in the courts of this State for the foreclosure of mortgages or other liens upon real estate, the defendant or defendants shall not be held to answer therein until the expiration of nine (9) months after the date of the service of summons upon the defendant who is the record owner of the property at the time of the filing of suit upon which the mortgage or other lien is sought to be foreclosed, and
"In all actions now pending in the courts of the State, for the foreclosure of mortgages or other liens upon real estate, in which the answer of defendant or defendants has already been filed, no trial shall be had, and no court of this state shall render judgment therein, until the expiration of nine (9) months after the passage and approval of this Act, upon which the mortgage or other lien is sought to be foreclosed."

**5.** *Energy Reserves Group, Inc. v. Kansas Power & Light Co.,* 459 U.S. 400, 411–12, 103 S.Ct. 697, 704–05, 74 L.Ed.2d 569, 580–81 (1983); *Seal v. Corporation Com'n,* 725 P.2d 278, 292 (Okla. 1986).

power of the state. In *Blaisdell,* 290 U.S. at 339–340, the Court observed:

> "And if state power exists to give temporary relief from the enforcement of contracts in the presence of disasters due to physical causes such as fire, flood or earthquake, that power cannot be said to be nonexistent when the urgent public need demanding such relief is produced by other and economic causes."

Farm relief legislation has been held to be a sovereign governmental function as the public welfare ultimately relies upon agriculture.[6] The agricultural industry during times of economic depression has been found to be affected with a public interest. And farm relief legislation has been based on the police power of the state that is exercised for the general welfare.[7]

It is immaterial whether the legislation enacted in the exercise of the police power affects contracts incidentally, directly or indirectly provided that the public purpose sought to be served sufficiently outweighs the effect on private rights.[8] Therefore, the question dispositive of this matter is whether the legislation is appropriate to the existing emergency and is based upon reasonable conditions.[9]

It is well settled that emergency legislation is presumed reasonable and, thus, valid. And excessive and oppressive abuse of power must be clearly established to find the legislation unconstitutional.[10] The determination of reasonableness depends upon the particular facts of each case.[11] Under general principles of constitutional law the means necessary to achieve the public purpose is primarily within the discretion of the legislature and the courts are usually precluded from challenging the necessity thereof.[12]

Moratory legislation enacted as emergency legislation has been upheld as not to impair the obligation of contracts in other jurisdictions.[13] These cases have espoused the view that the legislation is a necessary or reasonable exercise of the state's police power[14] and that the law affects merely the remedy and not any substantive contract right.[15] Impairment of a remedy by economic emergency mortgage moratory statutes has been found constitutionally permissible in many cases where the period of suspension prescribed is for a definite and reasonable time,[16] and proper means are provided to care for the interests of the

**6.** *Green v. Frazier,* 253 U.S. 233, 40 S.Ct. 499, 64 L.Ed. 878 (1920); *North Dakota–Montana W.G. Ass'n, v. United States,* 66 F.2d 573, 578 (8th Cir.1933).

**7.** *Dickey v. Raisin Proration Zone,* 24 Cal.2d 796, 151 P.2d 505 (1944); *State v. Klein,* 63 N.D. 514, 249 N.W. 118 (1933).

**8.** *Blaisdell, supra; State v. Oklahoma Gas and Electric Company,* 536 P.2d 887, 891 (Okla. 1975).

**9.** *East New York Sav. Bank v. Hahn,* 326 U.S. 230, 66 S.Ct. 69, 90 L.Ed. 34 (1945); *Blaisdell, supra; City of Guthrie v. Pike & Long,* 206 Okla. 307, 243 P.2d 697 (1952).

**10.** *Reherman v. Oklahoma Water Resources Bd.,* 679 P.2d 1296, 1300 (Okla.1980); *Jack Lincoln Shops v. State Dry Cleaners' Board,* 192 Okl. 251, 135 P.2d 332, 335 (1943).

**11.** *Von Hoffman v. City of Quincy,* 71 U.S. (4 Wall.) 535, 554, 18 L.Ed. 403 (1866); *Boyle County Stockyards Co. v. Com., Dept. of Agriculture,* 570 S.W.2d 650, 654 (Ky.Ct.App.1978).

**12.** *See Blaisdell, supra; In re Supreme Court Referendum Petition, Etc.,* 530 P.2d 120, 121 (Okla.1974); *Gray v. State,* 601 P.2d 117, 121 (Okla.Crim.1979); *Stockburger v. Jordan,* 10 Cal. 2d 636, 76 P.2d 671 (1938); *Norris v. Mayor and City Council of Baltimore,* 172 Md. 667, 192 A. 531 (1937).

**13.** *See* Poteat, *State Legislative Relief for the Mortgage Debtor During the Depression,* 5 Law & Contemp.Probs. 517 (1938).

**14.** *E.g., Hahn, supra; Blaisdell, supra; Des Moines Joint Stock Land Bank v. Nordholm,* 217 Iowa 1319, 253 N.W. 701 (1934); *Metropolitan Life Ins. Co. v. Morris,* 181 La. 277, 159 So. 388 (1935); *Wilson Banking Co. Liquidating Corporation v. Colvard,* 172 Miss. 804, 161 So. 123 (1935); *Honeyman v. Hanan,* 275 N.Y. 382, 9 N.E.2d 970 (1937); *Virginian Joint Stock Land Bank v. Shaffer,* 32 N.E.2d 862 (Ohio 1936).

**15.** *E.g., Reiman v. Rawls,* 188 Ark. 983, 68 S.W. 2d 470 (1934); *Tusha v. Eberhart,* 218 Iowa 1065, 256 N.W. 740 (1934); *Craig v. Waggoner,* 218 Iowa 876, 256 N.W. 285 (1934).

**16.** *Hahn, supra; Blaisdell, supra.*

mortgagee.[17]

The grave financial condition of the American agricultural industry that led to the challenged legislation must be considered by this Court in determining whether the mortgage moratory legislation here under review is appropriate and reasonable. The legislative history of the Farm Credit Amendments Act of 1985 [18] poignantly details the distressed economic condition of the agricultural industry as follows:

"The Nation's agriculture economy is in a depression. American farmers and ranchers today must cope with problems as severe as any their industry has faced since the 1930's. Low commodity prices, high interest rates, expensive production costs, instability in the export market, and plummeting farmland values have made it impossible for tens of thousands of farm operators to service their debt loads.

"According to the U.S. Department of Agriculture, half of all farmers have a negative cash flow and cannot meet operating or family living expenses from combined farm and off-farm earnings. Average farm real estate values nationwide have fallen by more than one-third since 1981, and in many states the decline has been well over 50 percent. Most economists forecast an additional 20 percent erosion in farmland values nationwide by 1987. U.S. farm exports have declined from the 1981 peak of nearly $44 trillion to an estimated $32 billion in 1985." *See also* Harl, *The Architecture of Public Policy: The Crisis in Agriculture,* 34 U.Kan.L.Rev. 425 (1986).

The present legislation does not divest permanently mortgagees of the existing remedy of foreclosure nor temporarily of all remedy. First, the operation of the statute is expressly limited for a definite period of one year under § 493.

Secondly, the legislation when viewed in the context of other remedies available under federal law adequately protects the interests of the Federal Land Bank of Wichita and its Associations. The Farm Credit Amendments Act of 1985 [19] created the Farm Credit System Capital Corporation as a new Farm Credit System institution that is authorized to raise funds within the System and to serve as a central and ready source of financial assistance to Farm Credit institutions that are experiencing difficulty. It acts as a system-wide warehouse to which System institutions may sell acquired properties and loans on which farmers have not made payment. The Capital Corporation may refinance, reamortize, or otherwise adjust debts for borrowers on any such purchased loans, or eventually liquidate loans if necessary.[20] It is to be used "primarily as a means to keep farmers on the land rather than as a means to foreclose and force them off the land." [21]

Section 2216a enumerates the purposes for which the new Capital Corporation is established, which mandates it shall:

"(2) acquire from other Farm Credit System institutions and participate with such institutions in nonperforming assets of such institutions;

"(3) hold, restructure, collect, and otherwise administer nonperforming assets acquired from or participated in with other Farm Credit System institutions, and guarantee performing assets held by other Farm Credit institutions;"

In addition, § 2216f establishes the general powers of the Capital Corporation, subject

---

17. *E.g., Blaisdell, supra; Rhodes v. Marengo County Bank,* 205 Ala. 667, 88 So. 850 (1921); *In re Davis,* 103 Neb. 703, 173 N.W. 695 (1919).

18. H.R.Rep. No. 425, 99th Cong., 1st Sess. (1985), *reprinted in* 1985 U.S.Code Cong. and Ad.News 2587, 2592–2593.

19. 12 U.S.C. § 2001 *et seq.*

20. 1985 U.S.Code Cong. and Ad.News, *supra* note 18, at 2588.

21. *See* Recommendation number 5 of the *Comm. on Government Operations, Farm Credit Administration's Role in the System's Crisis,* H.R. Doc. No. 561, 99th Cong., 2d Sess. 324 (1986) (based on a study made by its Government Information, Justice, and Agriculture Subcommittee). Among the findings of the Committee it found, "The system tended to use foreclosure on delinquent loans as a first resort, rather than attempting to work out problems before foreclosure." *Id.* at 3.

to Farm Credit Administration regulations, and includes the power to:

"(16) purchase at fair market value from any other System institution, on the request of such institution, loans (or interests in loans) that have been placed in nonaccrual status and assets (or interest in assets) in the account for acquired properties;

.     .     .     .     .

"(20) refinance, reamortize, guarantee, or compromise indebtedness, and otherwise provide debt adjustment assistance, with respect to any loan to a borrower of a System institution purchased under paragraph (16) or participated in by the Capital Corporation, and, after a determination by the Capital Corporation that the borrower could not reasonably be anticipated to meet loan servicing charges under a refinanced, reamortized, or otherwise restructured loan under reasonable terms and conditions acceptable to the Capital Corporation, liquidate any such loan," [22]

The challenged legislation is reasonably limited to the Federal Land Bank of Wichita and any Federal Land Bank Association inasmuch as the Federal Land Bank of Wichita, which serves Oklahoma, is the only system entity in Oklahoma that makes long-term loans to farmers for real estate purposes, and other non-system lenders do not have the remedy of requesting the Capital Corporation to purchase their bad loans at fair market value. By authorizing the Capital Corporation to initiate a foreclosure action the Act explicitly provides for an exception to the prohibition of initiation of foreclosure actions during the moratorium. In my view, the Act is of a character appropriate to the economic emergency of the agricultural industry and is based upon reasonable conditions that afford safeguards to protect the Federal Land Bank's interests.

I believe the farm foreclosure moratorium under the Act provides adequate protection for the Federal Land Bank of Wichita and its Federal Land Bank Associations inasmuch as any Federal Land Bank may sell nonaccrual loans to the Capital Corporation at fair market value. In addition, the Capital Corporation may initiate foreclosure actions where the loans are ineligible for restructuring assistance. The farm foreclosure moratory legislation neither impairs the integrity of the mortgage indebtedness nor alters the contract rate of interest. The Federal Land Bank and its Associations are not left without reasonable protection of their investment security. The present circumstances substantially differ from those in *Waterfield, supra.* Unlike today, there was no federal remedy available to the mortgagees nor was the moratorium restricted to Farm Credit System institutions.

I would therefore find that under the authority of *Blaisdell, supra,* the Act does not violate the state and federal contract clauses and Article II, § 6 of the Oklahoma Constitution. For the foregoing reasons, I respectfully dissent.

I am authorized to state that LAVENDER and SUMMERS, JJ., concur in the views herein expressed.

22. *See also* 12 C.F.R. § 611.1142(i) and (j).